Howard Lee HARRELSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 1919.

Supreme Court of Alaska.

Nov. 13, 1973.

---

David C. Backstrom, Asst. Public Defender, Fairbanks, Herbert Soll, Public Defender, Anchorage, for appellant.

Harry L. Davis, Asst. Dist. Atty., Monroe N. Clayton, Dist. Atty., Fairbanks, John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

BOOCHEVER, Justice.

Defendant Howard Lee Harrelson appeals from the judgment of conviction sentencing him to five years imprisonment with two and one-half years suspended for possession of heroin in violation of AS 17.-10.010. The only question presented here is whether the court below erred in refusing to exclude the fruits of a search made pursuant to a search warrant. The defendant contends that the affidavit in support of the warrant did not establish probable cause to search, as required by the Fourth Amendment to the U. S. Constitution, Art. I, § 14 of the Alaska Constitution, and Criminal Rule 37.

On October 5, 1972, Officer Joseph L. Turner of the Alaska State Troopers was told by an informer that a certain James G. Marion was in possession of 1½ ounces of heroin and several hundred barbiturate capsules, and that the heroin was situated near a toilet in the Marion residence. The informant further stated that a revolver stolen by one Jeff Koelzer was located at Marion's residence also, as was other unspecified stolen property. Finally, the informant asserted that a Carla Brewster and a Gary Lee Richards, who, the informant said, were guilty of passing $3,000

in bad checks, were residing in Marion's basement.

Officer Turner investigated this tip and learned from a fellow State Trooper that in the past six weeks, the house had been frequented by two known drug users. He also learned that a number of checks had indeed been drawn on Brewster's closed account, and a detective with the Fairbanks City Police Department then ascertained that Brewster and Richards had been present when the checks were passed. Officer Turner also checked the District Attorney's records and discovered that Jeff Koelzer had been convicted a year earlier for receiving and concealing stolen handguns, five of which remained unaccounted for.[1] On the basis of this tip and his subsequent corroboration, Officer Turner, on October 6th, sought and obtained a warrant to search the Marion residence.

Later the same day, the warrant was executed. Harrelson and a number of others were present at the house when the warrant was served. Drugs and narcotics were found throughout the house during the search.

1. The allegations of the affidavit in support of the warrant were as follows:

1. I am an Alaska State Trooper and have been a police officer for a period of nine (9) years.

2. On October 5, 1972, at approximately 1:30 a. m. I was told by an informant that:

(A) Last week James G. Marion had approximately 1½ oz. of Heroin in his possession at Marion's residence located on Dale Road. Marion also had at that time several hundred "Reds" or "Red Jackets" (barbituates) [sic].

(B) A stolen revolver, either a .41 or .44 magnum, is located in said residence; said revolver was stolen by Jeff Koelzer.

(C) Carla Brewster and Gary Lee Richards were presently staying in the basement of said residence and Carla Brewster and Gary Richards had recently passed approximately $3,000 worth of bad checks in the Fairbanks area and are planning on leaving the State.

(D) There is stolen property located in said residence, the informant failed to described [sic] the precise nature of the stolen goods;

(E) The heroin supply is situated in the house so that it can be disposed of by flushing it down the toilet.

3. James G. Marion, Carla Brewster and Gary Lee Richards have a reputation with me for being involved in Fairbanks drug traffic and have been associated with heroin (as addicts).

4. Rollie A. Port, an Alaska State Trooper has advised me that he has observed said house and it has recently in the last 1½ months been frequented by known drug users: Al Monsma on the night of 10/5/72 (identified by Port by general description and Monsma's truck) (who I know has been indicted in Washington for Sale of Heroin) and Raymond David Whitton (within the last week and one-half). Rollie Port also advised me that he was told by one Howard Harrelson that Harrelson sold "speed" at said house.

5. To further corroborate said informant, I today contacted Gary Vogt, detective of the Fairbanks City Police Department, and asked him to check on the bad checks that were supposedly passed by Carla Brewster and Gary Lee Richards. At that time, he had no particular evidence of said crime by Brewster and Richards. He immediately, at my request, checked with the Alaska National Bank and discovered that there were quite a number of checks drawn on Brewster's closed account. Gary Vogt received positive identification of Carla Brewster and Richards as the people present when the checks were presented and Billie Albright, and Sarah Messer of Alaska National Bank told him that the account in question was closed before the checkwas [sic] passed. An arrest warrant, No. 724498, has issued for Carla Brewster this afternoon.

6. Further, Gary Lee Richards and James Gordon Marion both have felony convictions for burglary.

7. I have checked with the records of the District Attorney's Office and I have established that Jeff Koelzer on November 10, 1971, was convicted of Receiving and Concealing 25 handguns stolen from the Sportsman's Mall on or about February 19, 1971. Approximately 30 handguns were stolen and some were never recovered.

8. James Gordon Marion has been convicted recently for sale of drugs and is a several-time convicted felon.

9. I have personally checked the description of the premises and have personally observed it at said location set forth above and as described above and Rollie A. Port has told me that he has observed James Gordon Marion, Adena Jenkins Marion, and Gary Lee Richards and Carla Brewster at said house within the last four (4) weeks.

At the time the search was commenced, Marion was seated in a chair. After the search had been proceeding for approximately an hour, Marion rose from his chair and moved to a couch. Officer Turner immediately proceeded to the chair and seized from the space between the cushion and the left armrest a plastic container through which he observed several orange capsules and piece of folded paper. Laboratory analysis later revealed the powder in the slip of paper to be heroin, and a fingerprint technician identified a latent fingerprint found on the inside of the slip to be that of the defendant.

A motion to suppress all items seized pursuant to the search warrant on the ground that the affidavit in support of the application for the warrant was insufficient to make out probable cause to search was denied by the trial judge, and objection to the admission of these items was reiterated unsuccessfully at trial.

The defendant's arguments can be distilled into five basic contentions: 1) that the informant's identity should have been disclosed; 2) that the informant's tip should have been regarded as presumptively unreliable because it was accusative, not merely informative; 3) that the affidavit did not establish the reliability of the informant, nor did it set out the underlying circumstances indicating how the informant came upon his information, (both of which Aguilar v. Texas[2] requires to be shown); 4) that the corroboration of the tip provided in paragraphs 5 and 7 of the affidavit was improper and inadequate and 5) that the "reputation" allegations contained in paragraphs 3, 4, 6, and 8 of the affidavit are of no probative worth whatever in establishing probable cause and should not have been considered by the magistrate.

■ The assertion that the informer's identity should have been disclosed may be disposed of summarily. In Aguilar v. Texas, the Supreme Court stated flatly that there was no constitutional basis for requiring the disclosure of an informant's identity.[3] Policy as well as precedent dictates this conclusion. Confidential informants would not long remain effective if disclosure of their identity could be compelled so easily. In addition, the divulging of an informer's name while a suspect is still at large could well jeopardize the informer's life.[4]

■ There is also no merit to the appellant's contention that because the informant's information was accusatory of criminal conduct, it was inherently unreliable. The defendant derives this novel proposition from isolated dicta in Davis v. State:[5]

Also, the hearsay evidence [contained in the affidavit] in the present case *can be* viewed less suspiciously because it does not offer information about a crime *per se*, nor does it establish the existence of the crime. It is informative rather than accusative, supplemental rather than essential. The police were independently aware of the commission of a crime[6] (emphasis added).

It is clear from this passage itself that we only proposed that the accusatory nature of an informant's tip be one factor to be weighed by the district judge in passing upon the reliability of the hearsay information; we never intended to intimate that accusatory tips were to be regarded *ipso facto* as untrustworthy.

---

2. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

3. 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed. 2d at 729. In a number of cases decided subsequent to *Aguilar*, warrants have been upheld despite the fact that they were issued upon information in part provided by unidentified informants; *see, e. g.*, United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.

2d 723 (1971); United States v. Coe, 440 F.2d 330 (7th Cir. 1971); United States v. Acosta, 411 F.2d 627 (5th Cir. 1969).

4. *See, e. g.*, United States v. Harris, 403 U.S. at 575, 91 S.Ct. at 2078, 29 L.Ed.2d at 729.

5. 499 P.2d 1025 (Alaska 1972).

6. *Id.* at 1029.

The only argument of substance that the defendant raises is the assertion that the affidavit did not meet the dual requirements set out by the United States Supreme Court in Aguilar v. Texas:

Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was "credible" or his information "reliable".[7]

But an exception to the first *Aguilar* commandment has been enunciated by both this court and the United States Supreme Court. In Spinelli v. United States,[8] the Court moderated the rigor of *Aguilar* by announcing that:

In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.[9]

After appraising the tip upon which the officers in Draper v. United States [10] had based probable cause to arrest, the Court wrote: "A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way." [11] This court adopted the same alternative in Davis v. State:

Absent an affirmative allegation of personal knowledge of the informant in the affidavit, the facts supplied must be so detailed as to support an inference of personal knowledge.[12]

■ A cursory reading of paragraph 2 of the affidavit indicates that the informant must have been relying on personal knowledge gained from first-hand observation or communicated to him personally. The quantity of drugs reported to be on the premises was specified with particularity, as was the caliber of the revolver. Further, that Brewster and Richards had passed a specified amount of bad checks and planned to leave the state is not information likely to have been the subject of casual rumor, but would be more likely to have been acquired through personal communication with those individuals. Under the constitutional standards established by this and the United States Supreme Court then, the affidavit was not deficient merely because it did not explicitly set forth the means by which the informant obtained his information.

■ The second prong of *Aguilar* presents a more serious question. Although the necessity of verifying in the affidavit an unidentified informant's personal reliability or the credibility of an informant's information was substantially eroded in United States v. Harris,[13] this court has re-affirmed the continuing vitality of the rule in two post-*Harris* decisions: Davis v. State [14] and State v. Davenport.[15] In order to prevent groundless searches based

---

7. 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed. 2d at 729 (citations and footnote omitted).

8. 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

9. 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed. 2d at 644.

10. 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

11. 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed. 2d at 644.

12. 499 P.2d at 1029.

13. In *Harris* four members of the Court found sufficient to establish the reliability of the informant the mere unsubstantiated assertion that the affiant had found his informer to be a "prudent person." (Justice White found the affidavit valid on separate grounds.)

14. 499 P.2d at 1029.

15. 510 P.2d 78, 82–83 (Alaska 1973).

on wholly unreliable information from being inflicted on citizens of this State, we shall continue to insist that the circumstances that would justify a magistrate in crediting an informant's statements shall be set out with specificity in the affidavit.

■ Customarily, this requirement has been met by means of an allegation that the informant had given accurate information in the past.[16] But *Aguilar* did not insist upon a demonstration that the informant was personally trustworthy. In the alternative, the Supreme Court indicated that an affidavit which alleged facts tending to corroborate the reliability of the *information* (as opposed to the informer himself) would be constitutionally sound also. In Davis v. State, we too recognized that the credibility of an informant's tip could be confirmed "by independent corroboration of incriminating facts by the police",[17] and we applied this principle in State v. Davenport, *supra*. There, an informant told the police that a number of handguns stolen from a particular gunshop could be found in the defendant's possession. Previously, the defendant had been arrested in connection with another offense, and one of the handguns seized at that time also proved to have been stolen from the named shop. Although the affidavit in support of the application for a warrant to search for the handguns did not explicitly allege the reliability of the informant, this court concluded that:

> since the independent discovery of the handgun at the time of Davenport's arrest tended to corroborate [the informant's] story, we believe that there was a substantial basis for crediting the hearsay.[18]

■ The "independent corroboration of incriminating facts" here was certainly as substantial as in *Davenport*. Investigating the informant's tip, the affiant, Officer Turner, discovered that the informer had known of the bad check offense even before the bank and the police learned of it. Officer Turner also verified that Koelzer had indeed been convicted for the theft of a number of handguns a year earlier, some of which had not yet been accounted for. And Marion's recent association with known drug dealers, which had been observed by a fellow State Trooper, tended to corroborate the informer's declaration that illicit drugs were on hand at the Marion residence. Officer Turner and the State Troopers did an exemplary job of verifying the informant's tip before seeking a warrant, and we find that the independent corroboration here was quite ample to justify a magistrate in crediting the informant's report.[19]

Harrelson also challenges the use of "reputation" allegations in a warrant affi-

---

16. *See, e. g.,* Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Allsenberrie, 424 F.2d 1209 (7th Cir. 1970); Morris v. State, 473 P. 2d 603 (Alaska 1970).

17. 499 P.2d at 1029.

18. 510 P.2d at 83. *Cf.* United States v. Crane, 445 F.2d 509, 519 (5th Cir. 1971):

> Information from an unidentified informant not known to be reliable, coupled with verification of that information in essential particulars, may form a basis for probable cause to arrest.

*Accord,* Katz v. Peyton, 334 F.2d 77 (4th Cir. 1964).

19. Harrelson challenges the propriety of certain of the items of corroboration. First he intimates that because the facts corroborating the bad check allegation were not discovered until after the incriminating tip was received, the verification is somehow suspect. We cannot conceive why corroboratory information fortuitously in the hands of the police before a tip is received should be any more reliable than the same information acquired after receipt of a tip. To so hold would discourage the police from investigating informer's tips before seeking a warrant.

The appellant also complains that the content of paragraph 7 of the affidavit was too dated to be relied upon. But appellant misapperceives the purpose of the paragraph in the affidavit as a whole. It is not the *date* of conviction that is material, but rather the *fact* of conviction of a person specifically named by the informer, and the detail that a number of the guns had not yet been recovered. As to each of the later, the date of Koelzer's conviction is irrelevant.

davit, such as those contained in paragraphs 3, 4, 6, and 8 of the warrant. Since we hold that the informant's tip and its subsequent verification established probable cause to search without regard to the reputation allegations, we need not pass on this issue, and we therefore decline to do so.

The *Aguilar* hurdles having been surmounted, it need only be determined whether the informer's tip and its subsequent corroboration constituted probable cause to search. Probable cause is made out when reliable information is set forth in sufficient detail to warrant a reasonably prudent man in believing that a criminal offense has been or was being committed.[20] Beyond peradventure that standard was met here.

The conviction is affirmed.

---

20. Berger v. New York, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1049, 1050 (1967).