**Anthony Larry KELLER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2330.**

Supreme Court of Alaska.

Dec. 22, 1975.

---

James L. Bruce, Asst. Public Defender, Herbert D. Soll, Public Defender, Ketchikan, for appellant.

Geoffrey G. Currall, Dist. Atty., Ketchikan, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and BURKE, JJ.

BOOCHEVER, Justice.

Anthony Larry Keller was found guilty of two separate offenses: possession of amphetamine tablets with intent to distribute or sell that drug and possession of heroin.

He appeals from a denial of his motion to suppress certain evidence and from the sentence imposed. Keller contends that the affidavit, on the basis of which a search warrant was issued, was defective because it did not allege as its basis the personal knowledge of an unnamed informant, and it did not supply other facts sufficiently detailed to support an inference of personal knowledge by that informant. Keller argues additionally that the finding of probable cause in the search warrant is not supported by the facts set forth in the affidavit.[1]

1. If the affidavit is insufficient, it would follow that the finding of probable cause is erroneous since the only basis for that finding is the affidavit. AS 12.35.010 provides in part:

A judicial officer may issue a search warrant upon a showing of probable cause, supported by oath or affirmation . . . .

On December 29, 1973, in Ketchikan, Alaska, Magistrate William Marks issued a search warrant authorizing the search of a blue suitcase in the custody of Larry Keller. The issuance of the search warrant was based on the affidavit[2] of Carl W. Swanson, an Alaska State Trooper.

As the affidavit indicates, Trooper Swanson and Corporal Sorden of the State Troopers' Office in Ketchikan were first alerted to Keller's possible arrival in their city by a telephone call to Corporal Sorden from David Wilma, a special agent for the Federal Drug Enforcement Administration in Seattle. Wilma advised Corporal Sorden that Keller would be arriving in Ketchikan that day, December 29, 1973, on an Alaska Airlines flight, with a blue suitcase containing a large amount of narcotic drugs. This information had been related to Wilma by Police Chief Payne of the Centralia, Washington, police department. Chief Payne, in turn, had received the tip from an informant, whose identity was known only to Chief Payne.

Later that day, Payne was contacted by Trooper Swanson of the Alaska State Troopers office. Payne told the caller that his informant was known to be reliable because he had been used in past investigations; specifically, the informant had been used for approximately five years in six or

2. The affidavit in support of the application for a search warrant reads:

Trooper Carl W. Swanson, Alaska State Troopers, being first duly sworn, on oath says: That I have reason to believe that there is concealed in a blue suitcase in the custody of Larry Keller who is destined to arrive at Ketchikan, State of Alaska, aboard Alaska Airlines Flight 67 on 12.29.-73, certain property described as follows: Dangerous, Depressant, Stimulant or Hallucinogenic drugs, further that this affidavit is based upon the following reasons for my belief;

On 12.29.73, at approximately 10:30 A.M., David Wilma, a special Agent for the Federal Drug Enforcement Administration, contacted Corporal Ronald E. Sorden by phone and advised that a subject known to him as Larry Keller, described as a Caucasion male, 24 years of age, 69 inches, 150 pounds, long brown hair would be enroute Ketchikan, State of Alaska, on Alaska Airlines Flight 67, carrying a blue suitcase as checked baggage which contains a large amount of narcotic drugs. At 12:20 P.M. on 12.29.73 the King County Department of Public Safety, located in Seattle, Washington, was contacted by phone whereupon Sgt. James P. Muscat, Badge #39 of that Department verified the fact that David Wilma is in fact a bona fide agent of the Federal Drug Enforcement Administration. At 12:45 P.M. on 12.29.73 Kenneth E. Payne, Badge #301, Chief of Police of the Centralia, Washington Police Department, was contacted by a person to person phone call to his home phone in Centralia, Washington. His home phone number was given to the long distance operator by the Centralia, Washington Police Department when Chief Payne was called person to person at the Department's phone number. At this time Kenneth E. Payne stated that the information related by David Wilma had been related to him by a reliable informant, known only to Chief Payne. Kenneth Payne stated that his informant, known to be reliable from past investigations, had said that Larry Keller would be transporting a large shipment of narcotic drugs to Ketchikan, Alaska in a blue suitcase aboard an Alaska Airlines Flight. Kenneth Payne further stated that this informant has been used for approximately five years in six or seven cases with three convictions on drug related cases. Kenneth Payne further stated that information on Larry Keller's drug trafficking has been obtained through his personal investigation over a period exceeding one year. Payne also stated that Larry Keller left Centralia, Washington at 7:00 A.M. 12.29.73, bound for Sea-Tac Airport, located near Seattle, Washington, and that Keller would be enroute to Ketchikan, Alaska aboard Alaska Airlines. At 3:00 P.M., 12.29.73 affiant was advised that Larry Keller was enroute Ketchikan, Alaska but that the suitcase in question had been left behind in Seattle due to an error on the part of Alaska Airlines. At about 5:00 P.M., 12.29.73 affiant and Corporal Sorden met Alaska Airlines Flight 67 and observed Larry Keller deplane. Corporal Sorden observed Larry Keller make a claim with Alaska Airlines for the mishandled suitcase. The suitcase is due to arrive in Ketchikan, Alaska on the next available Alaska Airlines Flight. Further the affiant was a party to all phone conversations other than the original conversation between Corporal Sorden and David Wilma. Wherefore, affiant prays that a search warrant be issued for the above described suitcase to make a search thereof for the property described above according to law.

seven cases which resulted in three convictions for drug related offenses. Payne further stated that he had personally obtained information regarding Keller's drug trafficking through his investigation over a period exceeding one year. Payne informed Swanson that Keller had left Centralia at 7:00 a. m. on December 29, 1973, bound for the Seattle-Tacoma airport and that Keller would be enroute to Ketchikan.

At 3:00 p. m. on December 29, 1973, affiant Swanson was advised from an unspecified source that Keller was enroute to Ketchikan, but that the blue suitcase had been left behind in Seattle due to an error on the part of Alaska Airlines. Swanson and Sorden met the flight and observed Keller deplane and file a claim with the airline for the missing suitcase. Affiant informed the magistrate that the suitcase was due to arrive on the next flight to Ketchikan.

Swanson appeared before the magistrate and requested that a search warrant for Keller's suitcase be issued. Upon presentation of Swanson's affidavit, the magistrate, having concluded that the probable cause requirement was satisfied, issued the warrant. A search of the suitcase revealed seven individually wrapped bags, each containing 1,000 amphetamine tablets, and one small package containing heroin. After a motion to suppress was denied, Keller was found guilty of possession with intent to sell or distribute amphetamine tablets and possession of heroin.

■ The question presented is whether the affidavit contains sufficient facts to establish probable cause for the issuance of the warrant. This is a question of constitutional stature, for the state and federal constitutions require that warrants issue only upon a showing of probable cause.[3] In *Berger v. New York,* 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040, 1050 (1967), the United States Supreme Court stated:

> Probable cause under the Fourth Amendment exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. (citations omitted)

■■ The only evidence placed before the magistrate in the instant case was that contained in the affidavit. It is on those facts contained in the written affidavit that the magistrate had to base his determination in deciding whether probable cause existed.[4] It is imperative that a magistrate be presented with adequate supporting facts, rather than mere affirmations of suspicion or belief.[5]

■ An affidavit may be based on hearsay so long as a substantial basis for crediting the hearsay is presented to the magistrate. *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697, 707 (1960).[6] Similarly, in *Erickson v. State,* 507 P.2d 508, 517 (Alaska 1973), we held that hearsay information from an informant could serve as the basis for a finding of probable cause for an arrest if it is "reasonably trustworthy".

---

3. The fourth amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no warrants shall issue, but upon probable cause,* supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized. (emphasis added)
 Art. I, sec. 14 of the Alaska Constitution is identical except for the addition of the term "and other property" in the catalogue of protected zones.

4. *United States v. Anderson,* 453 F.2d 174, 175–77 (9th Cir. 1971); *Morris v. State,* 473 P.2d 603, 605 (Alaska 1970).

5. *Aguilar v. Texas,* 378 U.S. 108, 112, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, 727 (1964); *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159, 161 (1938).

6. *See also State v. Davenport,* 510 P.2d 78, 83 (Alaska 1973); *Jackson v. State,* 509 P.2d 278 (Alaska 1973).

■ In *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964), the United States Supreme Court set forth a two-pronged test for evaluating the sufficiency of an affidavit submitted as grounds for issuance of a search warrant, where the affiant is seeking the warrant on the basis of information supplied by an informant. The Court stated:

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observation of the affiant, . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, . . . was "credible" or his information "reliable."

The first prong of the *Aguilar* test requires a statement of the manner in which the informant acquired his knowledge. It requires, in essence, that the information be based on personal knowledge and not merely gossip or rumor. Thus when the first prong of the test is satisfied, the issue becomes simply whether the informant is reliable, i. e. the second prong.

With regard to the second prong of the *Aguilar* test, we stated in *Davis v. State*, 499 P.2d 1025, 1029 (Alaska 1972), *reversed on other grounds*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), that:

> In addition, the judge "must be informed of some of the underlying circumstances . . . from which the [affiant] concluded that the informant . . . was

'credible' or his information 'reliable'." This reliability might be established by demonstrating past reliability, by independent corroboration of incriminating facts by the police, or through the personal identity and involvement of the person giving the information.[7]

■ Thus, it is apparent that, under both federal law and Alaska law, where an affidavit relies upon the assertions of confidential informants to establish probable cause, the affiant must set forth facts which enable the magistrate to judge for himself the probable credibility of the informant.[8] Only if this requirement is met can a reviewing court be certain that the magistrate has fulfilled his constitutional duty to render an independent determination that probable cause exists. Frequently, this requirement is satisfied by means of an allegation that the informant had given accurate information in the past.[9]

■ Turning to the present case, we note that the affidavit indicates that the informant was "known to be reliable from past investigations" and that the informant had been used for approximately five years in six or seven cases resulting in three convictions. Such allegations are sufficient to satisfy the second prong of the *Aguilar* test in that they verify the informant's personal reliability.

As the state acknowledges, the affidavit does not contain an affirmative allegation of personal knowledge on the part of the confidential informant. In fact, the affidavit is silent as to the manner in which the informant gathered his information. The state contends, however, that the first

7. Quoting from *Aguilar v. Texas*, 378 U.S. at 114–15, 84 S.Ct. at 1513–1514, 29 L.Ed.2d at 729 (1964) (footnotes omitted).

8. In *Erickson v. State*, 507 P.2d 508, 517 (Alaska 1973), we noted that there is a greater need to establish the credibility of the

informant when he is an unnamed police contact than in other situations.

9. *See, e. g., Jones v. United States*, 362 U.S. at 271, 80 S.Ct. at 736, 4 L.Ed.2d at 708; *Harrelson v. State*, 516 P.2d 390, 395 (Alaska 1973).

prong of the *Aguilar* test is nevertheless satisfied because the affidavit contains statements of sufficient detail to support an inference of personal knowledge on the part of the informant. This theory was first enunciated by the United States Supreme Court in *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L. Ed.2d 637, 644 (1969), where the Court stated:

> In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

We have also embraced this modification of the first prong of the *Aguilar* test, most notably in *Harrelson v. State,* 516 P.2d 390, 394 (Alaska 1973), and *Davis v. State, supra,* where we stated:

> While reliance upon hearsay does not change the standards of probable cause, it does add to the burden which must be met by the affiant. The information must be based on the personal observations of the informant, and not his suspicions, beliefs, or some form of double hearsay. Absent an affirmative allegation of personal knowledge of the informant in the affidavit, the facts supplied must be so detailed as to support an inference of personal knowledge. 499 P.2d at 1029.

■ Therefore, before the search warrant can be upheld, we must determine whether the "personal knowledge" requirement of *Aguilar v. Texas, supra,* as modified in *Spinelli v. United States, supra,* has been met. In other words, we must determine whether the informant's tip described Keller's activity in sufficient detail for the magistrate to decide if there was a substantial basis for an inference of personal knowledge on the part of the informant. A literal reading of the affidavit is that all of the information supplied by David Wilma came from the informant. The affidavit states that when Trooper Swanson called Chief Payne, "Kenneth E. Payne stated that the information related by David Wilma had been related to him [Payne] by a reliable informant". The information related by David Wilma, and, therefore, by the informant, was that on December 29, 1973:

> Larry Keller, described as a Caucasian male, 24 years of age, 69 inches, 150 pounds, long brown hair would be enroute Ketchikan, State of Alaska, on Alaska Airlines Flight 67, carrying a blue suitcase as checked baggage which contains a large amount of narcotic drugs.

Since under such an interpretation of the affidavit, all this information was supplied by the informant, we have no difficulty holding that the first prong of the *Aguilar* test, personal knowledge of the informant, was satisfied.

The United States Supreme Court in *Spinelli v. United States, supra,* stated that the detail provided by the informant in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), provides a suitable benchmark.[10] In *Draper,* the informant described the container as a light tan zipper case that would be hand carried; here the container was described as a blue suitcase that would be checked baggage. Although here the description did not include the exact clothes that Keller would be wearing (as was the case in *Draper*), the description of Keller was comparable to that supplied in *Draper.* The lack of specificity about the type and quantity of illegal drugs is offset by the more particular description of the travel plans of the defendant. In *Draper,* the in-

10. 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

formant could only say that the defendant was traveling by train from Chicago and would arrive within the next two days, while here a precise account, including the particular airline and flight number, was supplied. In *Spinelli,* the court held that the detail must be such that the magistrate could reasonably infer that the information was obtained in a reliable manner.[11] On the basis of the detailed information supplied here, there is such a reasonable inference.

It may be argued, however, that the affidavit should be read differently. The affidavit, after relating that Chief Payne "stated that the information related by David Wilma had been related to him by a reliable informant" added:

> Kenneth Payne stated that his informant . . . had said that Larry Keller would be transporting a large shipment of narcotic drugs to Ketchikan, Alaska in a blue suitcase aboard an Alaska Airlines Flight.

Thus, it is contended that the information relayed by the informant did not include the description of Keller, the specific flight number or the information that the baggage was checked. Even if the affidavit could be read in this narrow manner,[12] it is adequate to support issuance of the warrant. The minimum amount of specificity or detail necessary to support an inference that the source of the informant's tip is trustworthy can only be determined on a case-by-case basis. Furthermore, although *Draper* is a benchmark, it does not set forth in precise terms a minimum standard of specificity.[13] Generally, the detail must be sufficient so that a

> magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.[14]

---

11. 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed. 2d at 644.

12. In addition, the magistrate also had the information that Chief Payne, based upon his personal investigation over a period exceeding one year, personally knew that Larry Keller was involved in drug trafficking. In *Aguilar, supra,* the court recognized that the affidavit at issue rested only on an informant's tip. The court indicated that had other information gained through independent police surveillance been included, it would "present an entirely different case". 378 U.S. at 109, 84 S.Ct. at 1511, 12 L.Ed.2d at 725, n.1 Chief Justice Burger, speaking for the plurality in *United States v. Harris,* 403 U.S. 573, 581–83, 91 S.Ct. 2075, 2080, 29 L.Ed. 2d 723, 732–33 (1971) quoting from *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708 (1960), stated:
 "Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to skepticism than would be such a charge against one without such a history, . . . ."

> We cannot conclude that a policeman's knowledge of a suspect's reputation—something that policemen frequently know and a factor that impressed such a "legal technician" as Mr. Justice Frankfurter—is not a "practical consideration of everyday life" upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that *Spinelli* prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation.

Chief Payne's personally obtained information that Keller was a drug trafficker and not merely rumored to be one, could certainly have been used by the magistrate as additional information supporting an inference of probable cause. Such information could be used to support the second prong of the *Aguilar* test, that of credibility of the informant. *United States v. Harris, supra. See also United States ex. rel. Saiken v. Bensinger,* 489 F.2d 865 (7th Cir. 1973) and *United States v. Unger,* 469 F.2d 1283, 1287 (7th Cir. 1972). We need not pass on the question of whether such information may also affect the first prong of the *Aguilar* test in light of the *Spinelli* modification, since the detail here meets that test without Chief Payne's supporting knowledge.

13. *See* The Supreme Court, 1968 Term, 83 Harv.L.R. 177–81 (1969–70).

14. *Spinelli v. United States,* 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 637.

In *Aguilar,* the informant's tip consisted of the bald assertion that the defendants were keeping amounts of illegal drugs for the purpose of sale. In *Spinelli,* the tip was only that the defendant was generally engaged in illegal bookmaking activities at two specified telephone numbers. Both tips were of general criminal activities and could easily have been accusations based merely on the individual's general reputation. Accordingly, they were held to be inadequate. The information supplied in *Draper,* however, described the defendant's specific appearance, dress, amount of material, destination, and where the drugs were located. The difference between the types of information lies not only in the amount of detail supplied, but also in the type of detail. The quantity of information, although helpful, is not by itself dispositive.

In the instant case, even if the affidavit were read to include less detail than a literal reading would require, the amount and type of detail supplied by the informant to Chief Payne was certainly more adequate than that supplied in *Aguilar* and *Spinelli.* Instead of a report of general criminal activity, the information here related to a specific crime being committed under certain specified circumstances. At the very least, the informant's tip was that Keller was transporting a large amount of illegal drugs to Ketchikan, Alaska; that Keller was going to fly to Ketchikan on a specific carrier; and, that the drugs were being carried in a specific type of container, a blue suitcase. Thus, that tip contained details of a specific crime with information on how the defendant was going to travel, destination of the trip, and a specific description of the method of transporting the drugs. With two exceptions, this is the exact type of information contained by the tip in *Draper.* The only differences lie in the possible absence of a detailed description of Keller and the absence of specific information on the amount and type of drugs carried by the defendant. In *Draper,* however, the informant's tip was given prior to Draper's going to Chicago to secure the drugs. Thus, it cannot be inferred that the informer had actual knowledge of the commission of a crime since Draper had not yet obtained the drugs. In contrast, there is greater reliability here since the information was that Keller had the drugs in his possession and was taking them to Ketchikan.

Under the facts of this case, the possible absence of a specific description of Keller is not important. In *Draper,* the authorities receiving the tip did not know the defendant, and thus the specific description aided them in locating the defendant and confirming the tip. Here, however, the authorities already knew Keller. Since Chief Payne had been investigating Keller for over a year, a detailed description by the informant would have served no practical purpose. Therefore, the only difference of any real note is the absence of a specific description of the type and quantity of the illegal drugs. This is more than offset by the information that Keller had the drugs in his possession, whereas Draper had not secured any drugs when the tip was given. In addition, the magistrate had information based on the personal year-long investigation of Chief Payne that Keller had been trafficking in illegal drugs.[15]

■■■■■ The purpose of the warrant requirement is to prevent the police from hasty, ill-advised, or unreasonable actions in "the often competitive enterprise of ferreting out crime".[16] The law allows the police to infringe upon a person's fundamental right to be free from search and seizure only when such infringement is reasonable. The conclusion that the imposition is reasonable should not be drawn by the very persons who are the agency for that deprivation of rights. Thus, as we stated in *McCoy v. State,* 491 P.2d 127, 132 (Alaska 1971)

. . . the principle of antecedent justification is so central to the Fourth

---

15. *See* note 12, *supra.*

16. *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948).

Amendment that subject only to a few specifically established and well-delineated exceptions "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." [17]

The requirement that a warrant should be issued serves important purposes. It helps assure that a person's rights are not violated unless there is probable cause to believe that he is engaging in activities which outweigh his right to privacy. Reasonable persons may differ as to whether an inference that such probable cause exists can be derived from particular facts. A vital reason for the warrant requirement is that the inference be drawn by a neutral and detached judicial officer, a person who is not in a position to be influenced by personal or professional motives. Whether or not that inference is correct cannot be determined with a great degree of accuracy: "probable cause" is a concept which is not capable of precise definition, since it must cover a wide range of factual settings. Therefore, the conclusions of a magistrate should be given "great deference",[18] and

. . . [a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.[19]

The information that Keller had a large amount of drugs in a blue suitcase and was taking them to Ketchikan aboard a specified airline is not the type of general information that is likely to be the subject of rumors. A disinterested magistrate could reasonably conclude from that information that it was based on personal knowledge of the informant.

Accordingly, we conclude that even if the affidavit is read so as to indicate that the informant did not supply all of the information relayed by Agent Wilma, it was sufficient to support a holding by the magistrate that probable cause existed.

We are not unmindful of the procedures used by the Alaska State Troopers in this case. One of the major purposes of the warrant requirement is to guard against police excesses. Here the police, upon receipt of the information from David Wilma, called Seattle to confirm Wilma's identity as a special agent for the Federal Drug Enforcement Administration. They then called Chief Payne at home to verify not only the source of the information but also the details supplied by Wilma. Then, knowing that the illegal drugs were not on Keller's flight, the police met Flight 67 and verified as much of the previous information as could be checked. Furthermore, even though the police did not have a great deal of time before the drugs were to arrive, they properly took their information to a magistrate for a neutral determination that probable cause existed and obtained a warrant for the search. This is not a case where police excesses outweigh society's interest in discovering and preventing criminal activity. The State Troopers are to be commended for their thoughtful, deliberate, and reasoned approach to the investigation and apprehension of Larry Keller.

The appellant also contends that the five-year sentence imposed in this case was excessive.[20] The maximum penalty that

---

17. Quoting from *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed. 2d 576, 585 (1967) (footnotes omitted).

18. *Davis v. State*, 499 P.2d at 1028; *see also Spinelli v. United States*, 393 U.S. at 419, 89 S.Ct. at 590, 21 L.Ed.2d at 645.

19. *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1956).

20. Larry Keller is an unmarried, 25-year-old male without any prior criminal record.

can be imposed by statute for possession with intent to sell or distribute a hallucinogenic, depressant, or stimulant drug is 25 years in jail, and a fine of $20,000.00 [AS 17.12.110(b)].

We noted in *Nicholas v. State,* 477 P.2d 447, 448–49 (Alaska 1970), that the primary responsibility for sentencing was in the trial court, and that it is not the purpose of review to chill initiative on the part of the trial judge in attempting to arrive at a proper sentence. See also *Perrin v. State,* 543 P.2d 413 (Alaska, 1975). We will modify or disapprove a sentence only when on an independent review of the record, we are convinced that the sentencing court was clearly mistaken in imposing a sanction.[21]

Here we have a deliberate attempt by the defendant to profit by bringing a large quantity of illegal substances into the State of Alaska for the purpose of sale.[22] In considering the sentencing goals [23] of deterrence to the defendant, as well as deterrence to others with criminal tendencies, reaffirmation of societal norms, isolation of the defendant to prevent criminal conduct during the period of confinement and rehabilitation of the defendant into a noncriminal member of society,[24] we hold that the trial judge did not impose an excessive sentence.

Affirmed.

---

21. *Newsom v. State,* 533 P.2d 904, 912 (Alaska 1975); *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974); *Nicholas v. State,* 477 P.2d 447, 449 n.7 (Alaska 1970).

22. In *Waters v. State,* 483 P.2d 199, 201 (Alaska 1971), we indicated that four categories were relevant in sentencing drugs offenders:
 1. Smuggling or sale of large quantities of narcotics or possession for sale,
 2. Smuggling or sale of small quantities of narcotics or possession of small quantities for sale,
 3. Possession of narcotics without intent to sell, and
 4. Marijuana offenses.
 *See* the cases of *Meyers v. State,* 488 P.2d 713 (Alaska 1971) (sentence of eight years

with two suspended for sale of a large quantity of amphetamines and mescaline, etc.); *Wright v. State,* 501 P.2d 1360 (Alaska 1972) (six years for sale of LSD as a dealer); *Daygee v. State,* 514 P.2d 1159 (Alaska 1973) (four years for possession of 15 pounds of marijuana with intent to sell), for cases where sentences of persons with no previous adult criminal record were affirmed.

23. *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

24. The order committing Larry Keller, in addition to imposing a five-year sentence, also provided that Keller would be eligible for parole at any time at the discretion of the parole board.