Mike A. ROSA, Appellant,

v.

STATE of Alaska, Appellee.

No. 5334.

Court of Appeals of Alaska.

Sept. 17, 1981.

Ben Esch, Dickson, Evans & Esch, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

OPINION

PER CURIAM.

Michael Rosa appeals from his conviction and sentence for possession of cocaine.

Rosa's appeal of his conviction challenges the sufficiency of the affidavit upon which a search warrant issued. While we have found this a close case, we conclude that the affidavit contained enough "reliable information . . . set forth in sufficient detail to warrant a reasonably prudent [person] in believing that a criminal offense has been . . . committed,"[1] and, therefore, that probable cause for the search was shown.

A brief factual background is necessary for us to discuss our decision. The following facts, mostly undisputed, are established by the record:

On August 25, 1979, Gerald Davidovics, a nineteen-year-old high school student and Kotzebue policeman with two months experience, got a tip from a friend concerning some people in town selling cocaine. At the instruction of Alaska State Troopers, Davidovics "went undercover" to investigate the situation. He learned that the sellers were staying at the Nu-Luk-Vik Hotel, room 110. He went to the room at approximately 6 p. m., inquired about buying cocaine and was invited in by a man who was later identified as Frank Prince. Another man, later identified as Mike Rosa, produced white powder in bags, saying it was cocaine for sale at $3,000 an ounce. Prince showed Davidovics three bags of green vegetable matter, saying it was marijuana for sale. Davidovics smoked a joint with Prince, arranged to purchase one or two small bags of marijuana at $80 dollars a bag, then left, saying he had to get his money.

Davidovics went to the troopers, who searched him, then supplied him with $160

after recording the serial numbers of the bills. The troopers escorted him back to the hotel. Davidovics knocked, re-entered the room, and with little further conversation laid $160 on the hotel dresser and was permitted to take two small bags. As Davidovics opened the door to leave the room, he accidently knocked some shirts off hangers; while he bent to pick them up, Trooper Patterson and another officer entered into the room, telling the two men they were under arrest.

Trooper Patterson's testimony corroborated Davidovics' statements beginning with giving the young policeman the $160, following him to the hotel, and watching him enter room 110. Patterson testified that they had prearranged a signal whereby if a sale were consummated, Davidovics would open the door to the hotel room and remain inside on some pretext.[2] Upon entering the room to arrest the men, Patterson observed a small baggie with green vegetable matter, additional green vegetable matter, seeds, and money on the dresser, as well as white matter in bags in an open telephone stand that Davidovics had described as the place where the cocaine was stashed. The marijuana and the money were seized as well as the two small baggies purchased by Davidovics. A field test on each baggie indicated the presence of marijuana.

Following the arrest, Patterson and Davidovics obtained a search warrant from Magistrate Schaeffer; approximately two hours elapsed between the arrest and execution of the warrant.

◼ Although the officers obviously had enough information to establish probable cause to obtain a warrant, the parties correctly agree that only the information that is expressly contained in the affidavit submitted in support of the search warrant can be considered in determining whether there

1. *Harrelson v. State*, 516 P.2d 390, 396 (Alaska 1973) (footnote omitted). *See Ellsworth v. State*, 582 P.2d 636, 638, n.5 (Alaska 1978).

2. Davidovics was not asked directly whether or not there was any plan or signal. He denied

any ulterior motive besides clumsiness in knocking off the shirts and staying in the room to pick them up. The superior court later found that there had been a prearranged signal.

was sufficient probable cause to support the issuance of the warrant in this case. We therefore set forth the search warrant affidavit. Page one of the affidavit for search warrant is a preprinted form which, as filled in, reads as follows:[3]

> The undersigned, being duly sworn, states that they are positive that on the premises known as <u>Room 110, Nu-Luk-Vik Hotel</u> at or near <u>Kotzebue</u>, in the State of Alaska, there is now being concealed certain property namely:
> <u>Green vegetable material, refered to by Mike Prince and Frank Prince</u>[4] <u>as Marahuana. And a white substance refered to by Frank Prince and Mike Prince as cocaine.</u>
> which . . . is evidence of the particular crimes of <u>Sale of Marahuana and Possession of Cocaine</u> [and] tends to show that <u>Frank and Mike Prince</u> committed the particular crimes of <u>Possession of Cocaine Sale of Marahuana</u>. . . .

Page two of the affidavit begins with the preprinted words "and the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:" Thereafter, the following language appears:

> That the two men known as Mike and Frank Prince, residing in room 110, of the nu-luk-vik hotel, provided your affiant, Gerald Davidovics, with two plastic baggies of a green vegatable material, in exchange for eighty dollars ($80.00), which they said was marahuana. Further that they offered for sale a white substance in plastic bags which they said was cocaine.
> The cocaine was offered at three thousand dollars per baggie. Further that your affiant was provided with money by Trooper W. L. Patterson with which to purchase the marahuana. Further that

an agreement was made to purchase the cocaine at a later date. And that an actual purchase was made of two (2) baggies of marahuana. The white substance was contained in at least five plastic baggies.

> And upon the knowledge of your affiant, W. L. Patterson, that Gerald Davidovics was provided with money for the purchase of marahuana, and he purchased a substance that was field tested as marajuana. And that the money was located within the room, in which Gerald Davidovics was standing.[5]

The affidavit was signed by W. L. Patterson, state trooper, and Gerald Davidovics, police officer. It was witnessed by Magistrate Ross Schaeffer, and signed, sealed, and dated August 15, 1979.

The warrant that Magistrate Schaeffer issued tracks the affidavit. The warrant grants authority to search room 110 at any time within ten days and to seize green vegetable material and a white substance. When the warrant was executed at 8:15 p.m. on the evening of August 15, approximately two pounds of green vegetable material and 4 envelopes of white substance were seized, plus seeds, cigarette papers, baggies, foil, a wallet, and other miscellaneous items.

 In reviewing a magistrate's determination of probable cause this court must give great deference to the magistrate's decision and must resolve doubtful or marginal cases largely by the preference to be accorded warrants. *Johnson v. State*, 617 P.2d 1117, 1122 (Alaska 1980); *Lockwood v. State*, 591 P.2d 969, 970–71 (Alaska 1979); *Ellsworth v. State*, 582 P.2d 636, 638 (Alaska 1978). As the supreme court said in

---

3. The non-underlined portions in this quoted section are part of the affidavit for search warrant form. The underlined portions are not part of the form and were blank areas on the form that were filled in by the police. The spelling and sentence structure are as they appear in the original affidavit.

4. The names used in the affidavit, "Frank and Mike Prince," came from the hotel register. Inadvertent errors are not critical unless the

defendant can show they influenced the magistrate to issue a warrant he otherwise would have denied. *State v. Davenport*, 510 P.2d 78, 82 (Alaska 1973).

5. All of these paragraphs were typed on the search warrant affidavit by the police. The spelling and sentence structure are as they appear in the original affidavit.

State v. Davenport, 510 P.2d 78, 82 n.8 (Alaska 1973), quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 689 (1965),[6] "The Fourth Amendment's requirements are practical and not abstract, and affidavits 'must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion....'" *See also Nelson v. State*, 628 P.2d 884, 892–93 (Alaska 1981) (permitting reasonable inference that ties testimony together); *Vessell v. State*, 624 P.2d 275 (Alaska 1981) (rejecting claim based on too literal reading of affidavit, where affidavit as a whole indicated probable cause). The burden of proof on questions pertaining to the sufficiency of the affidavit is on the defendant. *Johnson v. State*, 617 P.2d at 1125.

■ Rosa contends that the affidavit fails to provide any time frame whatsoever

or any nexus between the alleged drug dealing and the hotel room.[7] We disagree and hold that the affidavit, taken as a whole and with reasonable inferences from the information contained in the affidavit, established probable cause to believe that marijuana and cocaine would be found in room 110 of the Nu-Luk-Vik Hotel. First, all of the information in the affidavit is based on first-hand knowledge of police officers; no part is hearsay from either a named or unnamed informant. The affidavit is not merely conclusory, but supplies details of the alleged crime.[8] Second, we believe that a common sense reading of the whole affidavit establishes that Gerald Davidovics, a police officer, had recently purchased the marijuana in room 110 and had made a future agreement to purchase cocaine that he saw at the time he made the marijuana purchase.[9]

6. The Supreme Court in *Ventresca* asserted the need for a common sense approach, stating that affidavits "are normally drafted by non-lawyers in the midst and haste of a criminal investigation." 380 U.S. at 108, 85 S.Ct. at 745, 13 L.Ed.2d at 689.

7. Time is a critical element in establishing probable cause. Without some reference to the time of the alleged criminal event, at least one court has held that probable cause cannot be established. *State ex rel. Townsend v. District Court*, 543 P.2d 193, 195 (Mont.1975). *See United States v. Bailey*, 458 F.2d 408, 411 (9th Cir. 1972).

8. Most cases discussing probable cause problems in affidavits for search warrants emphasize problems of corroborating informant hearsay. *See, e. g., Lockwood v. State*, 591 P.2d at 970–71 (Alaska 1975); *Harrelson v. State*, 516 P.2d at 394–95; *State v. Davenport*, 510 P.2d at 82–83. Where the information in the affidavit is first hand knowledge based on police investigation, courts are generally more willing to uphold a determination of probable cause. *See, e. g., Davis v. State*, 499 P.2d 1025, 1028–29 (Alaska 1972), *rev'd on other grounds*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

9. We believe that the officers' sworn statements that they were positive as to the presence of the drugs in the room is sufficient to support an inference that the drug transaction described in detail in the latter portions of the affidavit was a recent one. There are other indications on the face of the affidavit of both the recency of the drug transaction and its connection with room 110 of the Nu-Luk-Vik

Hotel. Room 110 was described specifically as a hotel room. Since it is a matter of common knowledge that transiency in hotels is high and that few people stay in hotels for extended periods, the fact that the suspects in this case occupied a hotel room gives rise to a reasonable inference that their conduct, as described in the affidavit, was recent. This is especially true when a common sense construction is given to the affidavit's statement that "... Mike and Frank Prince, *residing in room 110, of the Nu-Luk-Vik Hotel*, provided your affiant ... with [marijuana] ...." (Emphasis added.) The phrase "residing in room 110," when read in the light of common sense and in the specific context of the sentence within which it was used, gives rise to a three-fold inference. First, the phrase relates back grammatically to the time of the events described in the affidavit, thus reasonably implying that Mike and Frank Prince were "residing in room 110" at the time of the transaction. Use of this phrasing also gives rise to a second and closely related inference that the events described in the affidavit concerning Mike and Frank Prince actually occurred in the hotel room itself. Third, in the context in which it is used, the phrasing "residing in room 110" connotes an element of continuity, thereby indicating that the two men, Mike and Frank Prince, continued to occupy the room at the time the affidavit was signed. While, admittedly, the phrasing of the affidavit is inartful and ambiguous, we believe that a common sense reading of the affidavit by the magistrate could easily have led him to draw the three-fold inference we have described. So long as the affidavit was reasonably susceptible

Although Patterson and Davidovics did a very poor job of transferring their knowledge to the affidavit form, they possessed ample first-hand knowledge at the time that they applied for the warrant to establish probable cause to support issuance of a search warrant for the hotel room.[10] In light of the deference owed to the magistrate and to the cases that require a common sense, nontechnical reading of affidavits, we affirm the superior court's conclusion that the affidavit backing the search warrant adequately demonstrated probable cause for the search of room 110.

Rosa also challenges his sentence as excessive. Following the search, he was charged with possession and sale of marijuana and possession of cocaine. The marijuana charges were dismissed by the superior court, which ruled that insufficient evidence linked the marijuana to Rosa.[11] Rosa was convicted after a jury trial of posses-

---

to this interpretation, the deference that we are required to accord to the decision of the issuing magistrate mandates the conclusion that the language of the affidavit provided both a reasonable indication of recency and the indication of a nexus between the drug transaction and room 110 of the Nu-Luk-Vik Hotel.

Additional language linking the drug transaction described in the affidavit to room 110 of the Nu-Luk-Vik Hotel may be found in Trooper Patterson's statement that "the money was located within the room, in which Gerald Davidovics was standing." When the affidavit is read as a whole, reference to "the room" in this sentence can logically be construed to refer to only one room: room 110 of the Nu-Luk-Vik Hotel. Similarly, it is clear that "the money" refers to the $160 provided to Davidovics by Patterson.

10. We have set forth in full detail the facts known to the officers in this case even though we recognize that the only facts that are material to the issue of whether there was probable cause to issue a search warrant are those facts that were sworn to before the magistrate. We have included the full statement of facts to illustrate a recurring problem. The officers in this case clearly had sufficient information to establish probable cause. As laymen, they inartfully incorporated the information into the written affidavit presented to the magistrate. While we accept the affidavit as sufficient and affirm the case, we note again our belief that the issue here was very close. We suggest that it may be possible for law enforcement officers to avoid future problems in using form affidavits by making reference to a checklist designed to alert them to the kind of information that must be included in an affidavit.

Useful in this regard are the five "W's" and "H" beloved of newspaper editors: (1) who was observed?—names or other identifying information should be given, to the extent known; (2) when did the observations take place?—i. e., date, time and sequence of events; (3) why were the observations made?—if, for example, the information comes from an informant, the informant's reasons for making the observations should be specified and reasons for relying on the informant's information should be set out; (4) what was observed?—included here should be a full description of events relevant to establish probable cause; (5) where did the observations take place?—information concerning both the location of the observers and the persons or objects observed should be set forth, with the description of the location being as specific as the circumstances will allow; and, finally, (6) how were the observations made?—for example, was an informant used, was there an undercover officer, was electronic surveillance involved, etc. While all of the foregoing information may not be necessary in a given case to meet the constitutional standard of probable cause, it is highly desirable, and, if utilized would tend to insure that information possessed by police officers is accurately conveyed to the magistrate who must decide whether to issue a search warrant.

We would urge that court system personnel charged with the responsibility of magistrate training give consideration to revision of form affidavits currently in use in order to incorporate a checklist format similar in concept, if not in detail, to the one outlined above.

We further note that the great discrepancy between the actual knowledge of the officers in this case and the information communicated on the face of the affidavit that they prepared could easily have been resolved by supplementing the record with verbal testimony of the officers, under oath, before the magistrate. Electronic recording equipment is made widely available to magistrates throughout this state. We urge our magistrates to make use of this equipment to fill in any gaps in information set out in written affidavits submitted in support of applications for search warrants. When presented with a written affidavit, a magistrate should not hesitate to supplement the information contained therein by placing the officer under oath and questioning him or her on the record until satisfied that all facts known to the officer and relevant to probable cause have been elicited.

11. Previously, the district court had found insufficient evidence linking Rosa to the marijuana to hold him to answer in the superior court for possession or sale of marijuana.

sion of slightly less than four ounces of cocaine in violation of AS 17.10.010. He was sentenced to three years imprisonment with one year suspended. Rosa's offense is adequately described in the above discussion of the search warrant, but additional facts about the offender and the sentencing must be presented.

Rosa, thirty-eight years old at the time of the crime, was born in Puerto Rico and moved to New York City with his family at age eleven. He quit school in the tenth grade and began working as a cook's helper to support his family. He married at age eighteen, over the years fathered four children, and continued to work steadily as a busboy, waiter, and cook in restaurants in New York and Puerto Rico. In 1974, Rosa moved his family to Alaska, where he worked in Valdez for three years as a cook, was on unemployment for ten months, then worked ten months more in Anchorage hotels. Letters from friends and employers attest that he is a hard worker. Rosa's wife left him in 1978 and obtained a divorce in early 1979. Testimony by his brother at the sentencing hearing suggests that Rosa was distressed by the break-up of his lengthy marriage and that this may have contributed to his getting involved in the drug business.

Rosa has no history of drug or alcohol abuse and no criminal record. While on bond for the current offense and before the sentencing, Rosa was arrested and convicted in Anchorage for two sales of one-quarter ounce of cocaine. His five-year sentence in that case, which was made concurrent to the sentence in this case, was affirmed by this court in *Rosa v. State*, 627 P.2d 658 (Alaska App.1981).

Judge Sanders gave a long, careful explanation of the sentence he imposed, emphasizing the facts of this case. The court found that Rosa was the leader and paid the expenses for the trip to Kotzebue for Prince and himself. In addition, the court found that Rosa's possession of cocaine was prompted by a profit motive and that Rosa intended to sell the cocaine. Although Rosa

refused to discuss the offense in question with the probation officer who prepared the presentence report, Judge Sanders believed that Rosa's lack of cooperation stemmed from his attorney's instructions. The judge found, however, that Rosa's arrest for two cocaine sales in Anchorage while on bail for this offense evidenced his lack of interest in reforming, and he stated that Rosa had shown no remorse and indicated no desire to rehabilitate himself.

Because of the seriousness of the offense, the profit motive behind the possession, and the lack of remorse or interest in rehabilitation, Judge Sanders imposed a sentence of three years imprisonment, but because of the positive factors of Rosa's background, he suspended one year of that time. He justified this sentence in terms of all of the *Chaney*[12] goals, noting that he thought the chance of rehabilitation would be "practically nil at this particular time" if the defendant were simply placed on probation, especially since he had shown an unwillingness to cooperate with probation authorities. The court found that reaffirmation of societal norms required a sentence of imprisonment, as did the goals of protecting the public, and deterring the defendant and others. Returning to the subject of rehabilitation, the judge said he believed it might be difficult, but that the sentence would afford rehabilitative opportunities.

On appeal Rosa argues simply that his sentence is excessive. He suggests that too little emphasis was placed on rehabilitation and that undue emphasis was placed on his perceived lack of cooperation and alleged lack of remorse, whereas these were due solely to his counsel's instructions not to discuss the case.

The superior court judge's sentencing remarks are among the most thoughtful and most extensive we have seen. He acknowledged the defendant's right to remain silent as instructed by his counsel. He could justifiably have found from Rosa's subsequent drug charges in Anchorage that Rosa manifested no apparent remorse and did not

---

**12.** *State v. Chaney*, 477 P.2d 441 (Alaska 1970).

intend to remove himself from the drug scene. The judge discussed rehabilitation three separate times and said he hoped rehabilitation would be possible. His skepticism in light of Rosa's recent past, particularly the two Anchorage drug sales, is not unwarranted, and his conclusion that rehabilitation would not be probable without a term of imprisonment is not clearly mistaken.

██ The evidence clearly showed that Rosa had come to Kotzebue to sell cocaine. Both from his conduct, as described by Davidovics, and from the quantity he possessed, the superior court very fairly concluded that Rosa's intent was sale for profit. Indeed, Rosa does not claim that the judge erred in drawing this conclusion. Of the four categories of drug offenders defined in *Waters v. State*, 483 P.2d 199, 201 (Alaska 1971), Rosa best fits in category one. Rosa's sentence is toward the upper end of the range of recent sentences for cocaine possession,[13] but the relatively large quantity he possessed and his obvious profit motive justify the sentence.

Rosa's conviction and sentence are AFFIRMED.

---

13. *See Strachan v. State*, 615 P.2d 611 (Alaska 1980) (three years for cocaine possession; evidence showed history of small sales over substantial time); *State v. Walls*, 601 P.2d 1050 (Alaska 1979) (three-year sentence with all but seven days suspended and $5000 fine not too lenient; court did not err in declining to consider evidence that defendant was attempting to sell cocaine); *Wharton v. State*, 590 P.2d 427, 430–31 (Alaska 1979) (youthful first offender who possessed under two-thirds of a gram should receive a suspended imposition of sentence); *Weltin v. State*, 574 P.2d 816, 821 (Alaska 1978) (first offender who possessed small vial of cocaine sentenced to $500 fine).