**David James SCHMID, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 3687.

Supreme Court of Alaska.

July 18, 1980.

Walter L. Carpeneti, Asst. Public Defender, Juneau, Brian Shortell, Public Defender, Anchorage, for appellant.

Joseph D. Balfe, Dist. Atty., David Mannheimer, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

BURKE, Justice.

David Schmid was convicted of possession of marijuana for sale and distribution in violation of AS 17.12.010.[1] He now appeals that conviction raising the issues of nondisclosure of a confidential informant, probable cause to arrest, the search and seizure of two suitcases, the prosecution's failure to bring allegedly exculpatory evidence before the warrant magistrate, and the superior court's consideration of his failure to cooperate with the police as a factor in sentencing. With regard to the issues raised by appellant, we remand the case to the superior court for the purpose of conducting an *in camera* hearing on the issue of nondisclosure of the confidential informant and to allow the superior court to state the weight given in sentencing to the defendant's lack of cooperation. On these issues we retain jurisdiction. On the other issues that he has raised, we affirm.

The first link in the chain of events which led to David Schmid's arrest was a telephone call by an informant to Patrick John Schulte of the United States Customs Service in San Diego. The call was made February 20, 1976, at 5:10 p. m., California time. The informant gave a detailed description of a man named David Spencer who had checked two suitcases en route to Anchorage, Alaska, and he stated his belief that the suitcases contained marijuana. The informant gave Schulte a description of the suitcases, the colors, the numbers on the baggage tags, and the flight number and time. Schulte relayed the substance of the tip to Gary Schneider of the San Diego Police Department. Schneider, in turn, relayed the information to Dan O'Brien, special agent with the Federal Drug Enforcement Administration, assigned to Anchorage. At 3:30 p. m., Anchorage time, on this same day, O'Brien informed John Needham of the Anchorage Metropolitan Drug Enforcement Unit that Gary Schneider had received information from a reliable confidential informant regarding a shipment of marijuana. O'Brien informed Needham of the details of the informant's tip.

Officer Needham contacted the Seattle Police Department Airport Detail to corroborate the information he had received. At 7:10 p. m. a member of the Seattle Police Department advised Needham that an investigation had been completed which verified that David Spencer and the two bags were on their way to Anchorage.

Officer Needham then contacted Schneider in San Diego. Schneider informed Needham that the source of this information was Agent Schulte. Schneider again spoke with Schulte, who stated that the informant was extremely reliable, that the informant had participated in ten similar cases, and that Schulte had been associated with the informant for four years. Schneider related this information to Needham because Schulte could not talk to him personally.

On the basis of this information, Needham, accompanied by four Anchorage police officers, began surveillance in Anchorage International Airport at the gate where Spencer's flight, flight 27, was to arrive. Flight 27 arrived at approximately 10:25 p. m., and at 10:30 p. m. Needham observed an individual matching the description of

---

1. AS 17.12.010 provides: "Except as otherwise provided in this chapter, it is unlawful for a person to manufacture, compound, counterfeit, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, a depressant, hallucinogenic or stimulant drug." *See also* AS 17.-12.110(b).

David Spencer. Officer Harter went to the baggage pick-up area and located the bags as described with the correct baggage tag numbers. At approximately 10:55 p. m., the subject, Spencer, picked up the bags and checked his claim stubs with the Loomis guard on duty. Sergeant Jones, Investigator Parmeter, and Officer Needham took Spencer into custody, removed him to the first aid room, and advised him of his rights. A "weapons check" revealed a partially smoked marijuana cigarette and slips of paper indicating the price and quantity of the marijuana, an address, and what appeared to be a map. Jones and Needham also examined the bags. Both sniffed the seams and detected the smell of marijuana. Sergeant Jones punched the second bag to assist Officer Needham's sniff test, but Needham testified that this occurred only after he had smelled a faint odor of marijuana.

During the time Spencer was being arrested, Officer Harter worked the baggage with a dog trained to detect marijuana. The dog, however, did not signal that it had detected any drugs.[2]

Sergeant Jones carried the bags from the airport to the locked trunk of the police car. Spencer, at this time identified as David Schmid, was taken to the Anchorage Police Department and booked into jail. Jones and Needham continued on to the metro unit office. Upon their arrival, Jones removed the bags from the trunk and observed that both latches on one of the bags had come undone.[3] Someone was able to relatch the suitcase at one end. Green plastic covering was visible at this time and it was the opinion of Officer Needham that the plastic prevented the officers from relatching the suitcase completely. Officer Jones carried the bag, with the one end unlatched, into the metro office. Jones then unlatched the second latch and the suitcase "popped open" approximately eight

inches. One of the officers immediately closed the suitcase, but not before Needham had observed "a dark green plastic covering what appeared to be a hard matter . . square forms . . . approximately 6 inches to 8 inches."

The following day Officer Needham obtained a search warrant to search the bags. The bags contained clothing, thirty-six kilo bricks of marijuana, approximately one pound of hashish, and three baby bottles of hashish oil.

In an omnibus hearing before Superior Court Judge Seaborn J. Buckalew, on August 6, 1976, Schmid moved for discovery of the informant's identity, discovery of certain physical evidence not at issue here, and to suppress evidence obtained as a result of an allegedly illegal arrest and search. These motions were denied.

Schmid entered a guilty plea before Judge Buckalew, after an off-the-record in-chambers conference. *State v. Buckalew*, 561 P.2d 289, 290 (Alaska 1977). The State successfully petitioned this court to prohibit Judge Buckalew from further participating in the case on the basis of the judge's involvement in the plea-bargain. We remanded the case to the superior court with instructions to the presiding judge to assign the matter to another trial judge and give the defendant an opportunity to withdraw his guilty plea. *Id.* at 292.

On remand, Schmid withdrew his plea. At a second omnibus hearing before Presiding Judge Ralph Moody, Schmid repeated his earlier motions. Judge Moody refused to reconsider Judge Buckalew's rulings on the discovery of the informant's identity and the suppression motions.

Preceding a trial on the merits before Superior Court Judge Mark C. Rowland, the motions to discover and suppress were renewed and again denied. After a non-jury

---

**2.** Officer Needham failed to mention the results of the "dog search" to the magistrate in his application for a search warrant. He testified that he lacked confidence in the ability of dogs to detect the presence of drugs.

**3.** This statement is based on Officer Needham's testimony before the magistrate on February 21, 1976, one day following the incident. At trial on July 8, 1977, Officer Jones' testimony implies that only one of the latches had come undone.

trial, Judge Rowland found Schmid guilty and suspended imposition of sentence for three years, placing Schmid on probation. *See* AS 12.55.085. One of the conditions of probation was that the defendant serve 120 days in jail.[4]

## I. Discovery of the Identity of a Confidential Informant.

Neither the defense nor the prosecution in this case have any knowledge of the informant's identity. His or her identity, thus far, is known only to agents of the United States Customs Service in San Diego. Schmid urges us to order discovery of the informant's identity for two purposes: to attack the existence of probable cause for the search warrant and to assist in the preparation of defenses on the merits.[5] Schmid also maintains that the superior court erred in dispensing with an *in camera* hearing on the identity of the informant pursuant to Rule 37(d), Alaska R.Crim.P.

■ We first address Schmid's claim of error under Criminal Rule 37(d). That rule provides:

> *In Camera Hearing.* A person who challenges the validity of a search and seizure predicated on information gained from an informant used either in
>
> (1) support of an application for a warrant, or
>
> (2) as the basis of a search without warrant
>
> may move the court for disclosure of the identity of the informant pursuant to Rule 16. In the event the court determines that disclosure of the identity of

the informant is not required under Rule 16, the court shall conduct an in camera recorded hearing in which it shall investigate and take evidence so as to determine whether or not a search based on the informant's information was justified. Following the in camera hearing, the court shall grant or deny the motion to suppress on the record, and shall make written findings concerning the validity of the search based on the informer's information. The written findings, together with the record of the hearing, shall be sealed, and if the validity of the search is upheld the sealed testimony and findings shall, on appeal of the conviction in which evidence of the search was admitted, be transmitted to the supreme court for automatic review of the motion to suppress.

Schmid requested an *in camera* hearing after the court denied his motion to discover the identity of the informant. Failure to hold an *in camera* hearing on the issue of probable cause to order a warrant is clearly error. The language of the rule is mandatory: "in the event the court determines that disclosure . . . is not required . . . , the court *shall* conduct an in camera recorded hearing . . . ." (Emphasis added.) No exceptions can be inferred from this language.

The superior court denied the *in camera* hearing on the ground that the informant's tip was sufficiently credible and reliable to permit the issuance of a search warrant under the "two-pronged test" of *Aguilar* and *Spinelli*, discussed *infra*. The "two-

---

4. In *Boyne v. State*, 586 P.2d 1250 (Alaska 1978), we held that the superior court lacked the authority to impose a term of imprisonment as a condition of probation, as part of an order suspending the imposition of sentence pursuant to AS 12.55.085, since such conditions were not at that time specifically authorized by statute. Thereafter, the legislature enacted AS 12.55.-086, giving the trial courts such authority. Since Schmid was before the court for sentencing prior to the announcement of our decision in *Boyne*, this aspect of the court's order suspending the imposition of sentence must be re-examined, as noted later in the text of this opinion.

5. The motion to discover was made pursuant to Rule 16(b)(3), Alaska R.Crim.P., which provides: "The prosecuting attorney shall disclose to defense counsel any material or information within his possession or control which tends to negate the guilt of the accused as to the offense or would tend to reduce his punishment therefor," and Rule 16(b)(7), which provides: "Upon a reasonable request showing materiality to the preparation of the defense the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by subsections (b)(1), (b)(2), (b)(3), and (b)(6)."

pronged test" allows a magistrate to assume the tip's credibility and reliability from certain circumstances. Rule 37(d), however, provides a vehicle for the trial judge to discover whether these assumptions have any basis in the truth without releasing the informant's identity to the defendant and the public. The rule thus serves as a safeguard against abuses which may accompany the use of informants to establish probable cause. 1 W. LaFave, Search and Seizure § 3.3(g), at 577–86 (1978). Because we believe that denying an *in camera* hearing would thwart the rule's effectiveness as a safeguard, we hold that the failure to hold one was error, and we remand the case to the superior court to apply Rule 37(d).

We next address whether the superior court erred in denying Schmid's motion to discover the identity of the informant. Courts recognize that "the informer is a vital part of society's defensive arsenal," [6] and the secret of the confidential informant's identity is jealously guarded by the "informer's privilege." The leading case on the informer's privilege is *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). That case explains the purpose of the privilege as "the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59, 77 S.Ct. at 627, 1 L.Ed.2d at 644.

▮ The government's privilege of nondisclosure, however, is not absolute. It is limited by the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to

the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. *Id.* at 60–61, 77 S.Ct. at 627–628, 1 L.Ed.2d at 645.[7] The *Roviaro* Court fashioned a flexible standard which requires that the public's interest in protecting the flow of information be balanced against the defendant's right to prepare a defense to determine if disclosure is justified. Whether disclosure should be compelled "must depend upon the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. at 629, 1 L.Ed.2d at 646.

### A. Probable Cause

▮ Generally the defendant's interest in discovering the informant's identity to facilitate an attack upon probable cause to arrest or search upon a motion to suppress evidence is found to be insufficient to outweigh the public's interest. One policy that does weigh in favor of disclosure is the inhibition of unreasonable searches and seizures. That policy, however, is not considered a requirement of fundamental fairness because it does not affect the guilt or innocence of the defendant or the truth-finding function of the court. *People v. Goggins*, 34 N.Y.2d 163, 356 N.Y.S.2d 571, 574–576, 313 N.E.2d 41, 43, 44 (1974). If disclosure is denied, the defendant's only penalty is to be judged by the "untarnished truth." *McCray v. Illinois*, 386 U.S. 300, 306–07, 87 S.Ct. 1056, 1060, 18 L.Ed.2d 62, 68 (1967). See *Moreau v. State*, 588 P.2d 275, 288 (Alaska 1978) (court refused to apply plain error analysis to search and seizure issue first raised on appeal).

---

6. *McCray v. Illinois*, 386 U.S. 300, 307, 87 S.Ct. 1056, 1060, 18 L.Ed.2d 62, 68 (1967), *quoting State v. Burnett*, 42 N.J. 377, 201 A.2d 39, 43–45 (1964).

7. While these limitations appear to be based on the fifth amendment right to fundamental fairness and the sixth amendment right to confrontation, they are not constitutionally compelled.

Rather, they are an exercise of the United States Supreme Court's supervisory jurisdiction over the federal courts. *McCray v. Illinois*, 386 U.S. 300, 309, 87 S.Ct. 1056, 1061, 18 L.Ed.2d 62, 69 (1967). Nevertheless, the states appear to have adopted *Roviaro's* holding universally, and we follow their lead.

A second interest which favors disclosure is to ensure the credibility of the police officer/affiant testifying before the magistrate in support of the warrant request. *See McCray v. Illinois*, 386 U.S. at 307, 87 S.Ct. at 1060, 18 L.Ed.2d at 68–69. Reviewing courts in other jurisdictions, however, appear to leave the protection of this interest within the complete discretion of the issuing magistrate and the trial court. If the magistrate is convinced that police officers relied in good faith upon credible information supplied by a reliable informant, the magistrate need not require disclosure before issuing a warrant. *Id.* at 307–08, 87 S.Ct. at 1060–1061, 18 L.Ed.2d at 69. *See Harrelson v. State*, 516 P.2d 390, 393 (Alaska 1973). If the arrest or search is without a warrant, the trial judge also has complete discretion to determine whether disclosure is necessary to ensure the officer's credibility. *McCray v. Illinois*, 386 U.S. at 307–08, 87 S.Ct. at 1060–1061, 18 L.Ed.2d at 69 (citing Illinois precedent with approval). Courts rarely disturb this discretion on review.

While we recognize that the informer's privilege carries the risk that it may be used to shield misrepresentation, *Id.* at 316 n.2, 87 S.Ct. at 1065 n.2, 18 L.Ed.2d at 74 n.2 (Douglas, J., dissenting), or illegal police activities,[8] we believe the procedure for an *in camera* hearing set forth in Criminal Rule 37(d) sufficiently protects against this risk. Rule 37(d) provides that, if the trial court determines that disclosure is not required under Criminal Rule 16, the defendant may request the court to hear evidence on the matter *in camera*. In the event that the trial court upon hearing the evidence continues to deny disclosure and ultimately denies the suppression motion, Rule 37(d) provides that the sealed record be transmit-

ted to us for automatic review. We believe that such a procedure fairly accommodates both the defendant's interest in disclosure on the issue of probable cause and the public's interest in nondisclosure to promote the flow of information. *See United States v. Anderson*, 509 F.2d 724, 727, 730 (9th Cir.), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975); *People v. Goggins*, 34 N.Y.2d 163, 356 N.Y.S.2d 571, 574, 313 N.E.2d 41, 44 (1974); 1 W. LaFave, *supra* § 3.3(g), at 582–86. Since we have ordered the superior court to conduct an *in camera* hearing on this matter, we reserve jurisdiction to determine whether the denial of discovery of the informant's identity on the issue of probable cause was proper until after such time as that hearing is held.

### B. Defenses on the Merits

■ When the defendant's interest in learning the identity of the informant is to help in the preparation of defenses on the merits, that interest will in many cases outweigh the public interest in nondisclosure.

■ The defendant has the burden of showing a need for the informant's disclosure which is material to his defense. *United States v. Calhoun*, 542 F.2d 1094, 1098 (9th Cir. 1976); *United States v. Prueitt*, 540 F.2d 995, 1004 (9th Cir. 1976); Annot., 76 A.L.R.2d 262, 269–70 & 298 (1961). A simple assertion that the information is needed is insufficient to meet that burden for the reason that allowing mere speculation would effectively defeat the informer's privilege. *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45; *State v. Gill*, 22 Or.App. 484, 539 P.2d 1138, 1139–40 (1975). But the defendant should not have to prove before disclosure the very fact that he or she seeks to obtain through disclosure. *See*

---

8. For example, there is some speculation that members of the United States Supreme Court believed in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), that the government's "confidential reliable informant" might have been an illegal telephone wire tap. Y. Kamisar, W. LaFave, J. Israel, Modern Criminal Procedure 237 n.c. (1974), *quoting* F. Graham, The Self-Inflicted Wound 210 (1970). Schmid raised a similar issue be-

fore the trial court. He suggested that the type of information contained in the tip could be readily obtained by an airline's baggage employee. If this speculation were true, because Officer Schulte testified that the informant had been paid for the information, the possibility of state action and an illegal search exists in this case. *See McConnell v. State*, 595 P.2d 147 (Alaska 1979).

*Williams v. Superior Court*, 38 Cal.App.3d 412, 112 Cal.Rptr. 485, 489 (1974). We believe that the California Supreme Court has established a reasonable burden of proof on this issue. It requires that the defendant demonstrate a *reasonable possibility* that the anonymous informant *could* give evidence on the issue of guilt or innocence which *might* result in the defendant's exoneration. *People v. Garcia*, 67 Cal.2d 830, 64 Cal.Rptr. 110, 114, 434 P.2d 366, 370 (1967); *see also Williams v. Superior Court*, 112 Cal.Rptr. at 488.

■ The defendant usually makes his or her showing of a need for disclosure by the development of a particular defense. The "course and quality" of the prosecutor's case-in-chief, however, may also demonstrate a need for disclosure. Circumstances which weigh in favor of disclosure include the following: where the informant is a crucial participant in the illegal transaction, *Roviaro v. United States*, 353 U.S. at 64, 77 S.Ct. at 629, 1 L.Ed.2d at 47 (1957) (informant was buyer of narcotics in transaction where accused was charged with making the sale); where the informant was active in setting the stage for illegal transaction, *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45 (introduced defendant to undercover police officer); where the informant was an eyewitness, *United States v. Tucker*, 552 F.2d 202, 207 (7th Cir. 1977); *People v. Goggins*, 356 N.Y.S.2d at 574, 313 N.E.2d at 44; and where the evidence is equally balanced, *United States v. Tucker*, 552 F.2d at 207; *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45.

On the other hand, circumstances which weigh against disclosure include the following: where the prosecutor is able to present the case-in-chief without reference to the informant, Annot., 76 A.L.R.2d at 281; where the informant is a witness but other witnesses are available but are not called by the defense, *State v. Gill*, 539 P.2d at 1139–40 (other witnesses to alleged entrapment not called by defendant); where disclosure would endanger the informant, *United States v. Palermo*, 410 F.2d 468 (7th Cir. 1969); and where the informant is a mere "tipster" who only "points the finger of suspicion toward a person who has violated the law," *People v. Garcia*, 64 Cal.Rptr. at 114, 434 P.2d at 370; *see also United States v. Fischer*, 531 F.2d 783, 787 (5th Cir. 1976); *People v. Goggins*, 356 N.Y.S.2d at 576, 313 N.E.2d at 45.

■ The most important consideration in determining whether the defendant has made a sufficient showing to compel disclosure is the degree of the informant's participation in the charged offense. Where the informant is only a tipster who has played no part in the criminal act with which the defendant had been charged, the benefit of any testimony to the defendant's case is probably minimal when compared to the public's interest in protecting the identity of the informant. But where the informant is a witness or participant, the testimony may indeed be essential to the truth finding process. In such a case the requirements of fundamental fairness compel disclosure. *United States v. Fischer*, 531 F.2d at 787.

Applying these considerations to the instant case is impossible, however, because the degree of the informant's participation is unknown. Schmid has made no showing that the informant could provide evidence which might exonerate him. However, in all fairness to Schmid, such a showing is impossible due to the lack of knowledge concerning the informant.

When other jurisdictions have faced this dilemma, some have used an *in camera* hearing similar to that authorized by Criminal Rule 37(d). California authorizes such a proceeding by statute.[9] In *People v. Aguil-*

9. *See* Cal. Evid. Code § 1042(d) (West Supp. 1978), which provides:

When, in any such criminal proceeding a party demands disclosure of the identity of the informant on the ground the informant is a material witness on the issue of guilt, the court shall conduct a hearing at which all parties may present evidence on the issue of disclosure. Such hearing shall be conducted outside the presence of the jury, if any. During the hearing, if the privilege provided for in Section 1041 is claimed by a person authorized to do so or if a person who is authorized to claim such privilege refuses to answer

*era,* 61 Cal.App.3d 863, 131 Cal.Rptr. 603 (1976), one court explained that the advantage of such a proceeding was to eliminate the "guessing game" of whether the informant could give testimony on the issue of guilt or innocence.

> It allows the prosecutor to produce the informant in camera so that the court can determine just what the informant knows, and whether his testimony would be material on the issue of guilt. If his testimony at the in camera hearing shows that there is no reasonable possibility the informant could aid the defense, the public interest in nondisclosure of his identity can be preserved without any infringement on the defendant's right to a fair trial.

*Id.* 131 Cal.Rptr. at 606–07 (holding that an *in camera* hearing was mandatory upon a request by the prosecutor).

In a case where the informant had participated in the illegal transaction by introducing a police officer to the defendant so the officer could make the buy, the Fifth Circuit Court of Appeals found that it was unable to conclude from the record that the informant's "participation was such that fairness to defendant would require disclosure and production regardless of any showing the government could make in opposition." The court further found that the record was "silent about the interests which

the government may have in resisting disclosure and production." The court felt that in these circumstances an *in camera* hearing was appropriate, and it remanded to the district court for application of the *Roviaro* test to the information the district court could discover *in camera. United States v. Fischer,* 531 F.2d 783, 787–88 (5th Cir. 1976).

We recognize that the express language of Rule 37(d) requires an *in camera* hearing only in those cases where the discovery of an informant's identity is requested on the issue of probable cause to search and seize. However, since we are remanding the case for a hearing on that issue, we require the superior court to consider at the same time the degree of the informant's participation and apply the *Roviaro* balancing test. Once the superior court knows the identity and the degree of participation of the informant, it will have the facts necessary to make an informed decision on whether disclosure in open court would benefit Schmid. We therefore remand the case to the superior court to conduct such an inquiry. On remand the court should then record its findings and conclusions, and make the sealed record available to this court for review. We believe that such a procedure will strike a fair balance between the competing interests of the defendant and the public.[10]

---

any question on the ground that the answer would tend to disclose the identity of the informant, the prosecuting attorney may request that the court hold an in camera hearing. If such a request is made, the court shall hold such a hearing outside the presence of the defendant and his counsel. At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. A reporter shall be present at the in camera hearing. Any transcription of the proceedings at the in camera hearing, as well as any physical evidence presented at the hearing, shall be ordered sealed by the court, and only a court may have access to its contents. The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the

witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial.

10. We assume that Agent Schulte and the United States Customs Service will cooperate. Since the informant's identity would not be publicly revealed at this proceeding, his cooperation should not be a problem. However, if disclosure is compelled, the prosecution must at that time reveal the informant's identity or be subject to sanction. When the right to a fair trial is the reason for compelling disclosure, the usual sanction for failure to disclose is dismissal. *Roviaro v. United States,* 353 U.S. at 61, 77 S.Ct. at 628, 1 L.Ed.2d at 645; *United States v. Tucker,* 552 F.2d at 208.

## II. The Informant's Tip as Probable Cause to Arrest Schmid.

A police officer may make a warrantless arrest in Alaska if he or she has "probable cause to believe that a felony has been committed and a reasonable belief that the person to be arrested is the one who committed it." *Erickson v. State*, 507 P.2d 508, 517 (Alaska 1973). The officer's good faith belief, however, is not sufficient. What is required is that there be facts and circumstances known to the officer which would justify a prudent person in believing that an offense had been or was being committed. *Id.* Probable cause to arrest may be based upon reasonably trustworthy information from an informant. *Id.*

Thus, the question that we must decide is whether the confidential informant provided reasonably trustworthy information that would justify a prudent person in believing that an offense had been or was being committed and that David Schmid was the one who had committed it.

Two United States Supreme Court cases provide guidelines on which to gauge the reliability and trustworthiness of an informant's tip: the "two-pronged test of *Aguilar* and *Spinelli.*" *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The matter before the Court in those two cases was the use of an informant's tip to establish probable cause to obtain a search warrant. While our concern here is probable cause for a warrantless arrest, the issues of reliability and trustworthiness are the same. *See Spinelli v. United States*, 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

To satisfy the first prong of the test, the state must demonstrate that the informant obtained the information in a reliable manner. Under *Aguilar*, to demonstrate reliability, the basis for the informant's allegation that criminal activity is afoot must be shown. *Aguilar v. Texas*, 378 U.S. at 113, 84 S.Ct. at 1513, 12 L.Ed.2d at 728. In this case, however, such a showing is impossible because neither Officer Needham, who heard the tip in Alaska, nor Agent Schulte, who had communicated with the informant, knew the basis of the informant's knowledge.

A tip which does not satisfy the reliability requirement under *Aguilar*, however, can be reexamined under *Spinelli*, which states:

In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient *detail* that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

The detail provided by the informant in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), provides a suitable benchmark.

*Id.* 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644 (emphasis added). The informer in *Draper* described the defendant and his apparel with particularity, even including a description of his gait. The informer further stated that the defendant would be carrying a zippered bag and would arrive at the railroad station on either of two dates. *Draper v. United States*, 358 U.S. at 309, 79 S.Ct. at 331, 3 L.Ed.2d at 329–30.

The tip Officer Needham received was similarly detailed. "David Spencer" was described as a white male adult, approximately twenty-two to twenty-five years of age, 5'7" tall, 165 pounds, with long brown hair and a full brown beard, wearing brown shoes, brown corduroy pants, and a plaid Pendleton jacket. The suitcases were described and the claim check numbers provided. According to the informant, the suitcases containing marijuana were due to arrive in Anchorage at 10:54 p. m., February 29, 1976, on Northwest Airlines flight number 27. The informant did not disclose whether Spencer would accompany the bags from Seattle to Anchorage. When confronted with this detail, Officer Needham could reasonably infer that the informant had gained his infor-

mation in a reliable manner, rather than, for example, by casual rumor. *See Spinelli v. United States*, 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644.

The second "prong" of the test requires that the informant be trustworthy. A demonstration that the informant has proven reliable in the past satisfies this requirement. *Erickson v. State*, 507 P.2d at 517. Officer Needham had no personal knowledge of the informant's reliability. But he was told, through Officer Schneider, that Agent Schulte knew the informant for four years and had found the informant extremely reliable in at least ten previous cases where the informant had provided information that resulted in the seizure of narcotics.[11] If Officer Needham had spoken to Agent Schulte himself, this information would satisfy the reliability requirement. *Keller v. State*, 543 P.2d 1211, 1216 (Alaska 1975) (affidavit before magistrate by Alaska officer that set forth the Centralia, Washington police chief's experience with the informant was sufficient to meet the *Aguilar* standard). The fact that the knowledge of the informant's reliability in this case was double hearsay was not, we believe, a material distinction. We therefore conclude that the information was sufficient to establish that the informant was trustworthy.

Because the two "prongs" of the *Aguilar* and *Spinelli* test were satisfied, the confidential informant's information provided probable cause to arrest Schmid. Since we further conclude that the information contained in the tip would justify a prudent person in believing that David Schmid was committing an offense, we affirm the trial court's ruling that the arrest was lawful.

III. *The Search of the Suitcases.*

Schmid seeks to suppress the evidence obtained in the search of the suitcases. His

argument is based upon the fundamental principle that the product of an unlawful search cannot provide probable cause for the later issuance of a search warrant. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Schmid contends that three unlawful searches were made of the suitcases prior to the issuance of the warrant: the first, when the suitcases were manipulated at the airport; the second, when Officer Harter worked the baggage with a dog trained to detect marijuana; and the third, when one suitcase "popped open" as the officers attempted to secure it at the metro unit office, and that the information thus obtained was used to establish probable cause for issuance of the warrant authorizing the search of the suitcases.

Assuming, for purposes of argument, that there is merit to this contention,[12] we hold that the search warrant was nevertheless properly issued.

■ Use of unlawfully obtained evidence to secure a search warrant will not invalidate the warrant if it could have been issued on the basis of untainted evidence before the magistrate. *James v. United States*, 418 F.2d 1150 (D.C.Cir.1969); 3 W. LaFave, *supra* § 11.4(f), at 648. We believe that there was sufficient other evidence before the magistrate in this case to establish probable cause to search the suitcases.

■ A search warrant may be issued on the basis of reasonably reliable hearsay statements from a police informant. The test for crediting an informant's tip which is used to establish probable cause for a search warrant is the same test employed when a tip is used to establish probable cause for an arrest: the "two-pronged" test of *Aguilar* and *Spinelli*. *See Lockwood v. State*, 591 P.2d 969 (Alaska 1979); *Keller v.*

---

11. As stated in 1 W. LaFave, Search and Seizure § 3.3 at 511 (1978):

Courts have consistently held that an informant's track record is established by a showing (i) that on one or more occasions the informant indicated that a certain object, usually narcotics . . . [is] concealed at a certain place and (ii) that this information

was verified as true by a search which uncovered the specific items at the place indicated.

12. We emphasize the fact that we are not deciding that the argument is meritorious in fact. Its merit, if any, is merely assumed *arguendo*.

*State*, 543 P.2d at 1216. In section II we concluded that the informant's tip satisfied both prongs of that test, *i. e.*, that the information was reliable and the informant trustworthy, so as to furnish probable cause for Schmid's arrest. For the same reasons, we conclude that the information before the magistrate provided probable cause for issuance of the search warrant.[13]

In *Keller v. State*, 543 P.2d at 1214, we considered an affidavit in support of an application for a search warrant based on a tip supplied by an informant unknown to the affiant. In that case the affiant averred that the officer had worked with the informant "for approximately five years in six or seven cases with three convictions on drug related cases." *Id.* at 1214 n.2. These allegations set forth past instances of the informant's reliability sufficient to justify the magistrate's conclusion that the informant was probably presently trustworthy. *See id.* at 1216.

Under *Spinelli v. United States*, 393 U.S. at 417, 89 S.Ct. at 589, 21 L.Ed.2d at 644, the magistrate may consider independent police work which corroborates details of the tip to determine whether the informant is sufficiently trustworthy to be relied upon for issuance of a search warrant. *Id.* Verification of the details of the tip serves as a *present* demonstration of the informant's trustworthiness. *See generally* 1 W. LaFave, *supra* § 3.3(f), at 556–57.

In this case Officer Needham obtained information from the Seattle police confirming that an individual by the name of David Spencer was traveling to Anchorage on flight 27 with the two bags bearing the described baggage tag numbers. Further-

more, when Officer Needham met flight 27, he saw a person corresponding to the description provided by the informant. Because the informer has proven reliable on certain facts, it was reasonable to assume that the uncorroborated fact that the suitcase contained marijuana was also true.

Schmid however, cites a line of Alaska cases which appear to require that the police corroborate *incriminating* facts. *See Keller v. State*, 543 P.2d at 1216; *Harrelson v. State*, 516 P.2d 390, 395 (Alaska 1973); *Davis v. State*, 499 P.2d 1025 (Alaska 1972), *rev'd on other grounds*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Each of those cases states that the informant's tip could be confirmed "by independent corroboration of incriminating facts by the police." Of those cases, however, only in *Harrelson* was an incriminating fact corroborated. In *Keller*, the averment in the affidavit relating to the informant's past proven reliability were sufficient to meet the reliability prong of *Aguilar*. *See Keller v. State*, 543 P.2d at 1216. In *Davis*, where the quote originated, the issue was the reliability of hearsay contained in an affidavit from witnesses who had been questioned by police during an investigation. *Davis v. State*, 499 P.2d at 1027–28. The witnesses were not informers who had supplied the police with information about the commission of a crime.

While those three cases described corroboration of incriminating facts, none of them can be said to require that incriminating facts be corroborated, and we have never been presented with the issue.

13. The "untainted" evidence before the magistrate was basically as follows: Officer Needham described in detail the information that he had received from special agent O'Brien, concerning the tip supplied by the informant. He further described the corroborating details later received from members of the Seattle Airport Police Detail, indicating that the bags described by the informant were indeed on flight 27 to Anchorage, as was "David Spencer," the named suspect. Officer Needham then related his conversation with agent Schneider wherein Schneider told him that he had been informed by customs agent Schulte that "the informant

was extremely reliable, that he had participated in 10 cases," all involving large quantities of drugs and "similar in the respect that all had been shipped from San Diego to points other than San Diego," as well as the fact that Schulte had "had association with that informant for approximately 4 years." Finally, Officer Needham described the details of Schmid's arrival at Anchorage International Airport, including the fact that Schmid's appearance, the number and appearance of the bags, and the baggage tag numbers all matched the detailed description of those items given by the informant.

*Spinelli v. United States*, upon which *Davis, Harrelson* and *Keller* all rely, clearly does not require that incriminating facts be corroborated. In *Spinelli*, the Court cited *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), as a model, stating: "Independent police work in that case corroborated much more than one small detail that had been provided by the informant. There, the police, upon meeting the inbound Denver train on the second morning specified by informer Hereford, saw a man whose dress corresponded precisely to Hereford's description." *Spinelli v. United States*, 393 U.S. at 417, 89 S.Ct. at 590, 21 L.Ed.2d at 644. In *Draper*, whose facts closely resemble the facts at bar, none of the corroborated details of the tip were incriminating.

▆▆▆ We believe that requiring the police to verify an incriminating fact before corroboration can be used to demonstrate the reliability of an informant would severely limit the use of informants to provide probable cause. We are reluctant to restrict the police in this area and thereby discourage warrant applications in the absence of a good rationale, and Schmid has not presented us with any reasoning in support of the requirement in his brief. We therefore do not adopt the requirement at this time.[14]

IV. *Failure to Bring Allegedly Exculpatory Evidence to the Attention of the Magistrate.*

Officer Needham failed to inform the magistrate that a dog trained to detect marijuana did not signal that it detected any when it was shown the two suitcases. If dogs can be relied upon to detect contra-

band when it is present, this fact is arguably exculpatory.

▆▆▆ Whether omission of an exculpatory fact should invalidate a warrant is a question of first impression before this court. We have, however, ruled on the related issue of the effect of *misstatements* of fact on the issuance of a warrant. Where a misstatement of fact in the affidavit is material to a showing of probable cause, the misstatement will invalidate the search warrant. *Davenport v. State*, 515 P.2d 377, 380 (Alaska 1973). To establish that the misstatement is material, the challenge must show that the affidavit, with the untrue fact excised, would not support a finding of probable cause. *Id.; see State v. Davenport*, 510 P.2d 78, 82 n.7 (Alaska 1973).

▆▆▆ Applying this same rule to omissions requires that the omitted fact be added to Officer Needham's testimony before the magistrate. We conclude that the testimony still provided sufficient probable cause to issue the search warrant.[15]

V. *Consideration of Schmid's Failure to Cooperate With the Police After His Conviction as a Factor in Sentencing.*

Schmid also challenges the sentence imposed by the superior court. He contends that, in arriving at the sentence imposed, the court considered an impermissible factor: Schmid's refusal to reveal to the police the names of the other people involved in the drug transaction.[16]

Although excessiveness is the only statutory ground for a sentence appeal by the defendant,[17] we have previously considered

---

14. *See* 1 W. LaFave, *supra* § 3.3(f), at 556–61.

15. We note that there is no evidence indicating that the information was intentionally omitted in order to influence the magistrate to issue the warrant. *See* note 2 *supra*.

16. Although the effect of this factor on the length of the sentence is not known, it is clear from the record that the sentencing judge did consider Schmid's failure to identify his accomplices. At the time of sentencing the judge said:

> I was and am concerned about your failure to assist the officers involved in identifying the other persons involved. I do accept Officer Needham's statement that in fact if you made such disclosure it might well endanger your person. Nevertheless I have not weighed that in your favor.

17. AS 12.55.120(a) provides in part (emphasis added): "A sentence of imprisonment lawfully imposed by the superior court for a term or for aggregate terms exceeding one year may be appealed to the supreme court by the defend-

whether the trial court relied on impermissible factors. Most recently in *Franzen v. State*, 573 P.2d 55 (Alaska 1978), we examined whether the trial court erred in considering certain "unsubstantiated hearsay" in the presentence report. In agreeing to hear a sentence appeal on such grounds, we noted:

> Technically, the appeal in this case may not qualify as a "sentence appeal" under AS 12.55.120, since there is no claim that the sentence itself is excessive. Nevertheless, in *State v. Chaney*, 477 P.2d 441, 443 (Alaska 1970), we interpreted that section as requiring us "to consider the manner in which the sentence was imposed, including the sufficiency and accuracy of the information upon which it was based." Thus, we feel compelled to review the sentence in this case.

*Franzen v. State*, 573 P.2d at 55 n.2. In *Davenport v. State*, 564 P.2d 69 (Alaska 1977), the defendant had refused to reveal the names of his accomplices in a robbery, claiming that he feared he would be killed if he did so. On appeal Davenport alleged that the sentencing judge improperly relied on this refusal when he found Davenport was not rehabilitated and that this error resulted in the imposition of an unfair sentence. But because the degree of the sentencing judge's reliance upon this arguably impermissible factor was unclear, we remanded the case "to have the sentencing judge consider whether, absent the factor of Davenport's refusal to reveal his accomplices, the sentence would nevertheless have been ten years." *Id.* at 70. We then indicated that, if the judge on remand said the sentence otherwise would have been lower, we would "consider further the question of whether such a consideration is a permissible one in arriving at a sentence." *Id.* at 70–71.

█ The instant case is analogous to *Davenport*, and Schmid urges us to order a

similar remand. Because neither party has briefed the merits of the issue of the propriety of lack of cooperation as a sentencing factor and because the case requires a remand on another issue, we direct the superior court to state the weight given this factor in sentencing Schmid. If this factor affected the sentence imposed, we shall require the parties to further brief the merits of the issue.[18]

One final matter requires our attention. In *Boyne v. State*, 586 P.2d 1250 (Alaska 1978), we held that the superior court could not impose ·a term of imprisonment as a condition of probation, as was done in the instant case, as part of an order suspending the imposition of sentence, since such conditions were not at that time specifically authorized by statute. Thereafter, the legislature enacted AS 12.55.086, giving the trial courts such authority. Ch. 32, § 5, SLA 1979. Since Schmid was before the court for sentencing prior to the announcement of our decision in *Boyne*, and prior to the later enactment of AS 12.55.086, this aspect of the superior court's judgment must also be re-examined at the time of remand. *See id.* at 1252 n.4. We impose this requirement, *sua sponte*, because the briefs in this case were also filed prior to the announcement of our decision in *Boyne*.

REMANDED, in part, for (1) further proceedings under Rule 37(d), Alaska R.Crim.P., on the issue of disclosure of the identity of the informant; (2) re-examination of the terms of the court's sentencing order in light of our holding in *Boyne v. State*; and (3) to determine the effect the defendant's failure to cooperate with the police had on the sentence imposed. As to these issues we retain jurisdiction. If the superior court continues to refuse to order disclosure of the informant's identity, after conducting the *in camera* hearing required in part I of this opinion, we will automati-

---

ant *on the ground that the sentence is excessive.*

**18.** We note that the United States Supreme Court recently held that a ·defendant's similar failure to cooperate with government officials was a factor properly considered in sentencing

the offender. *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980). We, of course, are not bound to follow that holding in interpreting the requirements of our own state constitution.

cally review the record of that hearing and the court's findings and conclusions thereon. We will further review Schmid's sentence, or any modification thereof, only upon application and after further briefing. To be deemed timely, such application must be filed within ten (10) days after entry of the superior court's order on reconsideration of its sentence. On all other issues, the judgment is AFFIRMED.

RABINOWITZ, C. J., and BOOCHEVER, J., concurring separately.

BOOCHEVER, Justice, concurring.

I fail to see the need of disaffirming our prior decisions that police corroborate incriminating facts to establish the reliability of information used to obtain a search warrant. In this case, it seems to me that under our former test there was adequate incriminating information supplied to justify the issuance of the search warrant. I think that the detection of the odor of marijuana was an incriminating fact that could be considered. In the valid arrest of the defendant, the suitcases were taken into custody. Schmid had no constitutionally cognizable right to the inviolability of the aromatic molecules which surrounded his luggage. *State v. Goodley*, 381 So.2d 1180 (Fla.App.1980). The detection of the odor of marijuana as well as the fact that Schmid was traveling under an assumed name constituted corroboration of incriminating facts. We therefore need not decide whether innocent corroborating facts alone are sufficient.

Since the majority does reach that issue, I shall briefly set forth my views. I do not think that a hard line rule should be established one way or the other as to whether incriminating facts should be required. Professor LaFave seems to indicate that the circumstances surrounding the informant and the information should control as opposed to a specific requirement that in all cases corroboration be by incriminating evidence. At the same time, he states that corroboration of a few innocent and easily predictable events should not suffice.[1] I agree.

RABINOWITZ, Chief Justice, concurring.

I am in agreement with the court's opinion and further concur in the first paragraph of Justice Boochever's concurrence.

---

1. Professor LaFave states:

   Although it cannot be said absolutely that no corroboration but that described previously will ever suffice to show veracity, particularly in light of the less than helpful treatment of this particular issue by the Supreme Court, courts should be most reluctant to accept lesser degrees of corroboration as sufficient. Certainly corroboration of a very few innocent and easily predictable events should not suffice. Thus, when a first-time informer said he had seen defendant in possession of marijuana and that defendant was with a certain companion in a two-tone green Ford pickup, as in *Rushing v. State*, an officer who saw defendant with that person and in that vehicle did not have grounds to arrest. Whether corroboration of a longer list of innocent facts permits a different result is not easy to say, but it has been forcefully argued that the "number of facts criterion is as un-suitable here as it is in the self-verifying detail context." We have previously concluded that the giving of a detailed story does not establish veracity, the reason being that a prevaricating informer could just as well tell an elaborate lie, and it might also be argued that truthfulness is likewise not shown by the corroboration of many of the innocent facts in the informant's tale. But the two situations are not identical, for the latter instance at least eliminates the possibility that the informant has created the entire story out of the whole cloth. The judgment to be made is easily stated but not easily accomplished: when does verification of part of the informant's story make it sufficiently likely the entire story is true that it is reasonable to act upon what the informant said?

   1 W. LaFave, Search and Seizure § 3.3, at 560–61 (1978) (footnotes omitted).