Roy D. PETERSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3012.

Court of Appeals of Alaska.

June 21, 1991.

Blair McCune, Asst. Public Defender, John B. Salemi, Public Defender, Anchorage, for appellant.

Eric A. Johnson, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

## OPINION

COATS, Judge.

On August 26, 1988, a man dropped off a package at the Markair Cargo office in the Anchorage International Airport. He paid for the package to be shipped to Terry Barton in Bethel, Alaska. The Markair

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

employee at the desk became suspicious about the contents of the package; the weight did not coincide with the man's description of the contents and he had failed to put a return address on it. Because he was concerned that the package contained hazardous materials, he and another Markair employee opened it. The two employees testified that Markair policy was to open any package which they suspected contained "hazardous materials". Inside the box, they found a shirt, some packing material, and a clear plastic bag containing what appeared to be marijuana.

The Markair Cargo Supervisor called the airport detail of the Alaska State Troopers. A short time later, Sergeant Bowman and Investigator Bortz arrived at the Markair office. The cargo supervisor showed them the contents of the package. Bortz conducted a field test and concluded that the plastic bag contained marijuana. The officers replaced half of the marijuana in the package and set up a "controlled delivery" to the addressee, Barton, in Bethel.

When Barton picked up the package in Bethel, a trooper followed him to his residence and executed a search warrant. Barton told the trooper that he had purchased the marijuana from Roy Peterson of Anchorage.

After receiving this information in Anchorage, Investigator William McMillon telephoned Peterson and asked to buy some marijuana. Peterson directed McMillon to come to his residence where he sold one-quarter pound of marijuana to McMillon and Investigator Roy Minatra. Peterson offered to sell them an additional quarter-pound.

When the sale was completed, the officers identified themselves to Peterson. They told Peterson that he was not under arrest and would not be arrested that day. While questioning Peterson, the officers reminded him a number of times that he was not under arrest. Peterson admitted that he had sent the package containing marijuana to Barton. The troopers left Peterson's home without arresting him.

Based upon this information, a grand jury indicted Peterson on three counts of misconduct involving a controlled substance in the fourth degree. AS 11.71.-040(a)(2). The first count charged Peterson for delivery of more than one ounce of marijuana to Markair Cargo on August 26, 1988. The second and third counts were for delivery of more than one ounce to McMillon, and possession with intent to deliver.

Before trial, Peterson moved to suppress the statements he had made to McMillon and Minatra on the ground that he was in custody, and had not been informed of his *Miranda* rights. Superior Court Judge Mark C. Rowland denied the motion.

Peterson also moved to suppress evidence obtained from the search of the package delivered to Markair Cargo. He argued that the Markair employees had conducted a warrantless search and that the state had the burden to prove that state action was not involved to avoid suppression of the evidence.

In addition, Peterson moved to compel discovery of the names and addresses of the Markair employees. The state opposed this motion, claiming the "informer's privilege" under Alaska Rule of Evidence 509.

The state proposed an *in camera* hearing. Over Peterson's objection, Judge Rowland held the hearing and examined the Markair employees based on questions submitted by both counsel. Judge Rowland concluded that the employees were material witnesses as to Count I, and that disclosure of their identities would be required if the state pursued that count. The state then dismissed Count I.

Judge Rowland ruled that disclosure of the employees' identities was not required for Counts II and III. He found that their testimony was neither relevant nor material to those counts. He also denied several requests by Peterson to obtain a transcript of the *in camera* hearing with identifying information deleted.

Judge Rowland also denied Peterson's motion to suppress evidence obtained in the search. He concluded that the search did not involve government action.

A jury found Peterson guilty of the two counts of misconduct involving a controlled substance in the fourth degree. Judge Rowland imposed a suspended imposition of sentence with a condition of probation that Peterson serve six months imprisonment, concurrent on both counts. Peterson now appeals to this court.

Peterson first contends that Judge Rowland erred in denying Peterson's motion to compel discovery of the identities of the Markair employees. Peterson argues that the informer's privilege in A.R.E. 509 does not apply to this case and therefore, the court erred by allowing the state to rely on the privilege in refusing to disclose the employees' identities. Alternatively, Peterson contends that, even if A.R.E. 509 does apply, disclosure was still required because the information was essential to a fair determination of his case. In addition, Peterson argues that the court erred by failing to follow the correct procedure to determine whether the privilege should be honored. The state responds that the privilege does apply and that the court did follow the correct procedure, as set out in A.R.E. 509, Alaska R.Crim.P. 37 and 16, and approved of in *Schmid v. State*, 615 P.2d 565 (Alaska 1980).

Alaska Rule of Evidence 509(a) provides:

*Rule of Privilege.* The United States, the State of Alaska and sister states have a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

The United States Supreme Court described the informer's privilege as follows:

What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is

the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957) (citations omitted).

The informer's privilege is not absolute. The privilege must be balanced against the fundamental requirements of fairness. If the information concerning the informer "is essential to a fair determination of a cause," the identity must be revealed or the action dismissed. *Id.* at 61, 77 S.Ct. at 628. Application of the privilege requires a balancing test; the court must weigh the public's interest in effective law enforcement against the individual's right to prepare a defense. *Id.* *See also Balentine v. State*, 707 P.2d 922, 928–29 (Alaska App.1985); *Schmid*, 615 P.2d at 565.

We first reject the state's contention that Peterson's claim is moot because the identity of the employees was only relevant to Count I, which the state dismissed before trial. The state argues that, even if the initial search of the package was illegal, the fruit of the poisonous tree doctrine should not apply to the subsequent investigation of Peterson. The state claims that the subsequent investigation was so attenuated that it did not directly result from any illegally seized evidence. However, we believe that Peterson would have a legitimate argument to suppress evidence if he could show that the police investigation of him was a product of a prior illegal search. *See Landers v. State*, 809 P.2d 424 (Alaska App.1991).[1]

We next reject Peterson's argument that A.R.E. 509 does not apply to this case. Peterson argues that the Markair employees were not "confidential informants"

---

**1.** We do not decide what the outcome might be if Peterson could show that the state investigation of him was initiated because of information which the state obtained as the result of an illegal search. We only note that this issue does not appear to have been decided in this state.

within the meaning of A.R.E. 509. Peterson argues that, unlike the usual "tipsters," the anonymity of airline personnel performing their work-related duties is not required. Alaska Rule of Evidence 509(a) grants "a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law." The plain language of the rule appears to apply to all informants. The commentary suggests that a governmental agency may protect any informant who perceives a need for anonymity. "The rule recognizes that it is the informant's perception of danger that often leads the government to protect identity. To assure cooperation, the government reasonably may assuage unreasonable fears as long as it obtains no advantage in litigation in doing so." A.R.E. 509(c) commentary.

■ Peterson contends that the informer privilege should have given way because the identity of the informants was essential to determine the legality of the search of the package. However, prior decisions of this court and the supreme court have directed the trial court to employ a balancing test to determine whether the government is required to disclose the identity of an informant when the government claims the informer's privilege. The court must weigh the risk to persons or effective law enforcement against the relevance of the evidence to the defense and the constitutional right to a fair trial. *Balentine*, 707 P.2d at 929. In *Schmid*, the court stated:

Generally, the defendant's interest in discovering the informant's identity to facilitate an attack upon probable cause to arrest or search upon a motion to suppress evidence is found to be insufficient to outweigh the public's interest. One policy that does weigh in favor of disclosure is the inhibition of unreasonable searches and seizures. That policy, however, is not considered a requirement of fundamental fairness because it does not affect the guilt or innocence of the defendant or the truthfinding function of the court.

*Schmid*, 615 P.2d at 570. In *Roviaro*, the informer directly participated in the charged drug sale. The Court found that the charge was "so closely related to [the informer] as to make his identity and testimony highly material." *Roviaro*, 353 U.S. at 63, 77 S.Ct. at 629.

■ We believe that Judge Rowland did not abuse his discretion by the procedure which he followed and the decisions he made in this case. Upon the state's assertion of the privilege, Judge Rowland conducted an *in camera* hearing where he questioned the Markair employees using questions which were submitted by Peterson and the state.[2] The Markair employees expressed their desire to remain anonymous. After thoroughly examining the Markair employees, Judge Rowland concluded that the public interest in protecting the informers was outweighed by Peterson's right to prepare his defense on Count I, which charged Peterson with delivering the package containing marijuana to Markair on August 26, 1988. Judge Rowland

**2.** The procedure which the court used in this case is consistent with the procedure which is mandated in Alaska R.Crim.P. 37(d). That rule provides:

    **(d) In Camera Hearing.** A person who challenges the validity of a search and seizure predicated on information gained from an informant used either in

    (1) support of an application for a warrant, or

    (2) as the basis of a search without warrant may move the court for disclosure of the identity of the informant pursuant to Rule 16. In the event the court determines that disclosure of the identity of the informant is not required under Rule 16, the court shall conduct an *in camera* hearing in which it shall

investigate and take evidence so as to determine whether or not a search based on the informant's information was justified. Following the in camera hearing, the court shall grant or deny the motion to suppress on the record, and shall make written findings concerning the validity of the search based on the informer's information. The written findings, together with the record of the hearing, shall be sealed, and if the validity of the search is upheld the sealed testimony and findings shall, on appeal of a conviction in which evidence of the search was admitted, be transmitted to the court of appeals and the supreme court for automatic review of the motion to suppress.

concluded that, as in *Roviaro*, the informers (the Markair employees) were so closely related to that charge that their identity and testimony was highly material. The prosecution elected to dismiss Count I rather than disclose the identity of the informants. Judge Rowland concluded that it was not necessary for the state to disclose the identity of the informants as to Counts II and III. He found that the identity of the Markair employees was relevant only to the question of the search of the package which formed the basis for Count I.

Judge Rowland also found that the Markair employees were not acting as agents of the police and that there was no basis for suppression. We have examined the transcript of the *in camera* evidentiary hearing. That transcript supports Judge Rowland's ruling that the Markair employees acted independently and not as government agents. *See Snyder v. State*, 585 P.2d 229, 231 (Alaska 1978). We find no error.

■ During trial, Peterson made various requests to the court to allow him to see the transcripts of the *in camera* hearing with all information which might identify the Markair employees deleted. Judge Rowland denied Peterson's request. Peterson now argues that the court's ruling was in error.

The state argues that Alaska R.Crim.P. 37 and A.R.E. 509 set out the complete procedure which the court should follow when it takes evidence at an *in camera* hearing. Alaska Rule of Criminal Procedure 37(d) provides in part that:

> The written findings, together with the record of the hearing, shall be sealed, and if the validity of the search is upheld the sealed testimony and findings shall, on appeal of a conviction in which evidence of the search was admitted, be transmitted to the court of appeals and the supreme court for automatic review of the motion to suppress.

Alaska Rule of Evidence 509(c)(3)(iii) provides:

> If disclosure of the identity of the informer is made to the court and not to the defendant, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal and the contents shall not otherwise be revealed without the consent of the prosecution.

The prosecution claims that the plain language of the rule compels the conclusion that Peterson had no right to the transcript of the *in camera* hearing. However, we believe that the underlying policies relating to discovery in criminal cases call for a different conclusion. Alaska Rule of Criminal Procedure 16(a) sets out the general policy of discovery:

> **(a) Scope of Discovery.** In order to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, and the adversary system.

In *Braham v. State*, 571 P.2d 631, 643 (Alaska 1977) (footnote omitted), the supreme court stated that under Alaska Rule of Criminal Procedure 16, "non-disclosure was proper only if (1) the prosecution showed that discovery of the evidence would be inconsistent with protection of persons or enforcement of the laws and (2) the trial judge concluded that the material was not relevant to the defense."

The informer's privilege protects only the identity of the informers. The commentary to A.R.E. 509 states: "[o]nly identity is privileged; communications are not included except to the extent that disclosure would operate also to disclose the informer's identity." Courts have emphasized this limited scope of the informer's privilege. In *Roviaro*, the Court held: "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." *Roviaro*, 353 U.S. at 60, 77 S.Ct. at 627. In *Balentine*, this court also found that the privilege only covered the identities but not the contents of the information. *Balentine*, 707 P.2d at 928.

We believe that to the extent the court could delete any information tending to identify the Markair employees from a transcript of the *in camera* hearing, Peterson was entitled to an edited transcript. We therefore remand this case to the trial court to determine this issue. We direct the trial court to allow Peterson to have as much discovery as possible of the information that the court received at the *in camera* hearing which is consistent with protecting the identity of the Markair employees.[3]

■■■ Peterson next contends that Judge Rowland erred in denying his motion to suppress Peterson's statements to the police. A determination of whether a person is in custody is based on an objective test—would a reasonable person believe that he or she was not free to leave? *See Quick v. State,* 599 P.2d 712, 717 (Alaska 1979); *Hunter v. State,* 590 P.2d 888, 895 (Alaska 1979); *Thompson v. State,* 768 P.2d 127, 130 (Alaska App.1989); *Hampel v. State,* 706 P.2d 1173, 1178 (Alaska App. 1985). In applying the objective test, the court should consider the events prior to, during, and immediately after the interrogation. *Hunter,* 590 P.2d at 895; *Thompson,* 768 P.2d at 130. Custody is less likely to exist when the questioning occurs in the suspect's home. 1 W. LaFave & J. Israel, *Criminal Procedure* § 6.6(e), at 496 (1984). "The view that at-home questioning is noncustodial is strengthened when the suspect's friends or family members were present at the time." *Id.*

The questioning in this case took place in Peterson's home. The interview lasted approximately forty minutes. The troopers retained a friendly attitude throughout the interview. During the questioning, Peterson answered the phone, twice spoke to his son who was in the house, and explained what was happening to his wife when she returned home. McMillon assured Peterson on several occasions that he was not under arrest and would not be taken from his home. The troopers left without arresting Peterson. Based on these facts, Judge Rowland could properly find that Peterson was not in custody.

■■■ Peterson suggests that the interview was coercive so that his statements were involuntary. The officers made it clear that he would not be arrested that day and never threatened him in any way. Peterson has failed to establish that his will was overcome by the officers' actions or statements.

Peterson also argues that the troopers refused to leave when asked. The statement which Peterson relies on is equivocal. During the interview, Peterson said to the troopers: "let's not waste no more time, you got to get out of here, or take me out, or whatever you're gonna do." Peterson did not state that he wished to terminate the interview and he continued to talk with the troopers. A moment earlier, Peterson stated: "I do intend to cooperate." Judge Rowland could properly find that Peterson chose to speak with the troopers, and that a reasonable person in Peterson's position would have felt free to terminate the interview. Judge Rowland's finding that Peterson was not in custody was not clearly erroneous, and he did not err in denying Peterson's motion to suppress his statements.

The conviction is AFFIRMED. The case is REMANDED.

MANNHEIMER, J., not participating.

3. In the event that Peterson discovers information which he believes strengthens his motion to suppress, Peterson may refile the motion to suppress for the trial court to redetermine.